IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABRAHAM ITUAH,<br><br>    *Plaintiff*,<br><br>  v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br>NO. 19-05088 |

**PAPPERT, J.**                              December 29, 2020

## **MEMORANDUM**

  Abraham Ituah, acting *pro se*, sued the City of Philadelphia and individual City employees for allegedly violating his constitutional rights. The Court previously dismissed all claims in Ituah's Complaint, some with prejudice and others without. Ituah filed an Amended Complaint and the Defendants again move to dismiss. The Court grants the Motion and dismisses all claims.

I

  Ituah omits from the Amended Complaint many of the factual allegations in the Complaint. The Court, understanding that those are the facts upon which he relies, will refer to both complaints when recounting the facts here. Ituah is reminded, however, that he must plead all facts relevant to his claims in any future pleadings. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)).

Like the initial complaint, Ituah's Amended Complaint focuses on three events. In his Complaint, Ituah alleged that in 2015 the City unlawfully sold his property at 3843 Fairmount Avenue. *See* (Compl. 3–4, ECF No. 1). Soon thereafter, Ituah sued the City to set aside the sale on the theory that the City failed to give him proper notice. *See Ituah v. City of Philadelphia*, 2:16-cv-05772-GJP, 2017 WL 2079888, at *1 (E.D. Pa. May 15, 2017) (unpublished) (recounting the state-court litigation).[1] The court, however, repeatedly held that the City "had complied with the statutory notice requirements." *Id.* Nonetheless, Ituah now alleges that City attorney James Zwolak violated his "constitutional rights to private property" by failing to return this property to him. (Am. Compl. ¶ 3, ECF No. 12); *see* (Compl. 4–5).

The second event is the reaction by City employees to Ituah's unsuccessful lawsuit regarding the 3843 Fairmount Avenue property. First, Ituah claims that Zwolak discriminated against him because of his race and national origin by refusing to meet with him. (Am. Compl. at ¶ 3.) Second, he claims Carmen Sanchez, a City employee, billed him for incorrect tax amounts and applied his tax payments to the wrong accounts, causing him to file for bankruptcy in New York. (*Id.* at ¶ 3.) Third, Ituah claims Roslyn Speller, another City employee, violated his constitutional rights by refusing to shut off water service at one of his vacant properties, leading to $30,000 in charges. (*Id.* at ¶ 6.)

The final event involves the 2019 demolition of Ituah's 508 W. Tabor Street property. Ituah alleges Department of Licenses and Inspection Inspector Joseph

---

[1] In considering a motion to dismiss, courts may take judicial notice of prior judicial proceedings without converting the motion into one for summary judgment. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

Carroll violated his "constitutional rights to property ownership" by issuing a condemnation notice on 508 W. Tabor Street. (*Id.* at ¶ 4.) He also claims that City attorney Brendan Philbin violated his constitutional property rights by filing "an action to demolish the property" after he became offended by a dropped phone call with Ituah. (*Id.*) Ituah hired a structural engineer to contest the demolition order, but Philbin would not grant him additional time to fix the damage to his property, instead "press[ing] to obtain judgment to demolish." (*Id.*) Ituah next claims City attorney Pamela Thurmond retaliated against him because she had to travel to New York for Ituah's bankruptcy proceedings. (*Id.* at ¶ 5.) Specifically, she "engineered inaccurate bills collections and encouraged the licensing units to demolish" the 508 W. Tabor Street property and provided false information regarding the value of the 3843 Fairmount Avenue property, leading to higher amounts due to his creditors in 2018. (*Id.*) Ituah also alleges a John Doe police officer declared 508 W. Tabor Street condemned and ordered the tenants from the building and another John Doe officer ordered Ituah's car towed from the property without notice. (*Id.* at ¶¶ 4, 7.) Finally, Ituah alleges the City of Philadelphia is "guilty of malice and oppression as defined in civil code section 3294-3296." (*Id.* at ¶ 8.)

These three events caused Ituah financial harm, "several illnesses and sleepless nights" and "serious psychological and mental distress." (*Id.* at ¶ 4.) To remedy this harm, Ituah asks the Court to: (1) order more than $1,500,000 in damages; (2) prevent the City from collecting the costs for demolition of the 508 W. Tabor Street property; and (3) stop the City from collecting $22,000 of personal income tax for years he claims he was not a City resident.

II

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570

III

Section 1983 provides for the imposition of liability on any person who, acting under color of state law, "deprives another of rights, privileges or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983. Defendants move to dismiss Ituah's Amended Complaint for several reasons. They argue: (1) *res judicata*

4

bars his claims regarding the sale of the 3843 Fairmount Avenue property; (2) the applicable statute of limitations precludes claims related to conduct that occurred more than two years ago; and (3) Ituah fails to state a claim for relief against any Defendant. The Court addresses the claims against each Defendant in turn.

### A

James Zwolak moves to dismiss Ituah's claims that he intentionally discriminated against Ituah based on his race and national origin "for refusing to honor [his] invitation to discuss the illegal sale of the property as recommended by the state inspector general's office" and that he "was intentionally not willing to return the [3843 Fairmount Avenue] property." (Am. Compl. at ¶ 3.) As the Court explained in its prior Memorandum, because Ituah's claims rely on § 1983, Pennsylvania's two-year statute of limitations for personal injury claims applies. *See Pearson v Sec'y Dep't of Corrs.*, 775 F.3d 598, 602 (3d Cir. 2015). Thus, to the extent Ituah's claims against Zwolak relate to events that occurred before September of 2017—two years after the City sold Ituah's property and two years before Ituah filed his initial Complaint—they are dismissed with prejudice.

Even assuming the statute of limitations does not bar these claims, the Court dismisses them for independent reasons. First, Ituah fails to state a plausible claim for relief for intentional race discrimination against Zwolak. The Court reiterates that to prove discrimination under the Equal Protection Clause, Ituah must allege that Zwolak's refusal "had a discriminatory effect" and was "motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). Ituah does neither. He never alleges that Zwolak treated him differently from similarly situated

5

individuals in an unprotected class; nor does he allege that race or national origin motivated Zwolak's refusal.

Second, *res judicata* prevents Ituah from maintaining a claim against Zwolak for not returning the 3843 Fairmount Avenue property. Sale of that property has been thoroughly litigated and resolved in the state court. At least twice, Ituah asked the court to set aside the City's sale of the 3843 Fairmount Avenue property. *See Ituah*, 2017 WL 2079888, at *7. The state court denied this relief each time. *See id.* Because Ituah has litigated this issue against the City in state court, *res judicata* bars him from re-litigating it now. *See id.*; *Balent v. City of Wilkes–Barre,* 669 A.2d 309, 313 (Pa. 1995).

B

Carmen Sanchez moves to dismiss Ituah's claim that she is intentionally manipulating and inaccurately computing tax amounts for Ituah's properties in Philadelphia. If Ituah's claim against Sanchez relates to the sale of his 3843 Fairmount Avenue property, it fails for the reasons discussed above. But Ituah also appears to allege continuing tax-related violations by Sanchez. The Court dismisses this claim for two reasons. First, Ituah fails to state a facially plausible claim. *Twombly*, 550 U.S. at 570. In particular, he fails to plead sufficient facts from which the Court can infer that Sanchez is liable for financial injuries related to tax calculations and assessments. *Iqbal*, 556 U.S. at 678. Second, even if Ituah did sufficiently plead this claim, principles of comity bar him from pursuing it in federal court. *Kerns v. Dukes*, 153 F.3d 96, 101 (3d Cir. 1998). "[S]uits seeking damages because of the imposition of allegedly wrongful taxes are not cognizable in a federal court; while not expressly barred by the Tax Injunction Act, damage actions are barred by principles of comity provided that

6

effective relief is obtainable in state court." *Id.* (citing *Fair Assessment in Real Estate v. McNary*, 454 U.S. 100 (1981)).  Ituah makes no argument that he could not obtain effective relief in state court for Sanchez's alleged misconduct, nor could he.  He could challenge the tax assessments through local or state procedures.  *See, e.g.*, *Trading Co. of N. Am. v. Bristol Twp. Auth.*, 47 F. Supp. 2d 563, 572–73 n.14 (E.D. Pa. 1999) (citing 53 Pa.C.S. § 7101 *et seq.*) (providing "property owners remedies to contest the validity of various municipal taxes and municipal liens").  Moreover, "Pennsylvania provides a remedy for individuals who bring section 1983 actions challenging tax assessments." *Id.* (discussing *Behe v. Chester Cnty. Bd. of Assessment Appeals*, 952 F.2d 66, 67 (3d Cir. 1991)) ("[T]axpayers may bring suits in Pennsylvania state courts alleging violations of both the Pennsylvania Constitution and the United States Constitution.").  Thus, to the extent Ituah seeks damages for Sanchez's alleged tax violations, principles of comity bar him from pursuing this claim in federal court.

C

Ituah claims Roslyn Speller retaliated against him for his lawsuit against the City by refusing to shut off water service at one of his properties.  Speller moves to dismiss because Ituah fails to state a claim against her.  Ituah does not specify under which constitutional provision he brings this claim, but the Court assumes he intends a First Amendment retaliation claim.  To plead that claim, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).  "[T]he key question in determining

whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id.* (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). Assuming Ituah's lawsuit was protected conduct, he fails to state a claim because his Amended Complaint does not permit the Court to "infer more than the mere possibility of misconduct." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Ituah does not allege that Speller's actions would "deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296. Nor does he claim Speller even knew about his lawsuit against the City, so he did not allege a causal link between that case and Speller's alleged retaliation.

## D

Ituah's retaliation claim against Pamela Thurmond fails for similar reasons. Ituah alleges she retaliated against him by "engineer[ing] inaccurate bills" and "encourage[ing] the licensing units to demolish [his] building." (Am. Compl. at ¶ 5.) He further claims she knowingly presented false information about the value of his property and urged the bankruptcy court to dismiss his bankruptcy case.[2] (*Id.*) She did all this apparently because he insisted she attend in-person bankruptcy proceedings in New York. (*Id.*) First, Ituah has not established that insistence on in-person bankruptcy proceedings is protected conduct. Even if he did, he fails to allege that Thurmond's conduct would "deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296. And he fails to plead a causal link between Thurmond having to attend his bankruptcy proceedings and her conduct

---

[2] Ituah's claim that Thurmond violated his "constitutional rights to sue under Diversity [sic] of citizenship," (Am. Compl. at ¶ 5), is obviously meritless.

8

thereafter. The facts alleged in support of this claim do not show that Ituah has a "plausible claim for relief," *Iqbal*, 129 S.Ct. at 1950, because they "do not permit the [C]ourt to infer more than the mere possibility of misconduct," *Fowler*, 578 at 211.

E

Ituah alleges Joseph Carroll, Brendan Philbin and two John Doe officers violated his constitutional property rights by facilitating demolition of the 508 W. Tabor Street property and towing his car from the property. Although he does not specify the constitutional underpinnings for these claims, they are best understood as Fourth Amendment unreasonable seizure, Fifth Amendment takings and Fourteenth Amendment substantive due process claims. *See* (Compl. at 3) (alleging violations of his Fifth and Fourth Amendment rights related to the demolition).

Ituah fails to plead facts supporting a Fourth Amendment claim. The Fourth Amendment provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A seizure of property occurs when "there is some meaningful interference with an individual's possessory interest in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quotation marks and citation omitted). Therefore, the demolition of the 508 W. Tabor Street property constitutes a seizure. However, properly pleading a seizure is not enough. "[R]easonableness is still the ultimate standard under the Fourth Amendment," so Ituah must allege that the seizure was unreasonable and plead facts supporting that allegation. *Id.* at 71 (quotation marks and citation omitted). He has not done so.

To the extent Ituah intends to raise a claim under the Fifth Amendment's Takings Clause, that claim also fails. The Takings Clause prohibits the government from taking private property for public use without providing just compensation. U.S. Const. amend. V. Nowhere in the Amended Complaint does Ituah claim that Defendants took his property for public use. Moreover, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). "The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a section 1983 action." *Edelweiss Dev. Corp. v. Cnty. of Susquehanna*, 738 F. Supp. 879, 883 (M.D. Pa. 1988). "Pennsylvania's Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just compensation for the taking of property." *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001) (citing 26 Pa. Cons. Stat. Ann. §§ 1-408, 1-502(e), 1-609). Ituah has not pled "facts sufficient to allege [his] use of procedures as set out in the Eminent Domain Code of Pennsylvania." *Bolick v. Ne. Indus. Servs. Corp.*, 666 F. App'x 101, 105 (3d Cir. 2016) (affirming dismissal of claims as premature where the plaintiffs had not raised claims concerning the demolition of their property pursuant to the procedures available under state law). It follows that he has not sufficiently pled a § 1983 claim premised upon a violation of the Takings Clause.

These claims similarly fail when construed as Fourteenth Amendment substantive due process claims.[3] "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292 (3d Cir. 1993). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 533 U.S. 833, 849 (1998). Ituah fails to allege that Carroll, Philbin or either of the John Doe officers acted arbitrarily or capriciously in issuing the condemnation notice and seeking demolition for the 508 W. Tabor Street property.[4] He alleges only that Carroll issued the condemnation notice for an "unknown reason." (Am. Compl. at ¶ 4.) And his allegation that Philbin filed the condemnation action because he was offended by a dropped phone call, and not because Carroll had issued a Notice of Violation for the property one week earlier, simply is not plausible. *Twombly*, 550 U.S. at 570; *see* (Mot. to Dism. Am. Compl., Ex. 3 at 18–19, ECF No. 14-3). Similarly, Ituah pleads no facts showing that the John Doe officers acted arbitrarily or capriciously by ordering tenants out of a building deemed "imminently dangerous" or by towing his car prior to demolition. *See* (Mot. to Dism. Am. Compl., Ex. 3 at 18).

---

[3] Although the Court considers this substantive due process claim now, it notes that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [that] claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). "The seizure of property implicates two explicit textual sources of constitutional protection, the Fourth Amendment and the Fifth." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50 (1993). Thus, even if Ituah pled facts sufficient to support a substantive due process claim for the seizure of the 508 W. Tabor Street property, the Court would dismiss it under *Albright*.

[4] Ituah also alleges that Carroll and Philbin "negligently" violated his "constitutional rights to property ownership." (Am. Compl. at ¶ 4.) That claim fails because "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original).

11

F

The remaining claims against the City ostensibly rely on a theory of municipal liability.[5] A plaintiff may pursue a § 1983 claim against a municipality under two theories. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). The first option is to allege "that an unconstitutional policy or custom of the municipality" caused his injuries. *Id.* The second option requires a showing that the plaintiff's injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

Ituah's allegations fall short of establishing municipal liability.[6] He never alleges that any City policy or custom or failure contributed to the retaliation or discrimination he allegedly suffered at the hands of individual City employees. *See* (Am. Compl. ¶¶ 5, 7, 8.). Nor does Ituah claim that some failure or inadequacy on the City's part caused those injuries. *See* (*id.*) He similarly fails to allege that a City policymaker—or a City policy or custom—was involved with the John Doe police officers ordering tenants out of his building or removing his car. (*Id.* at ¶ 7.)

---

[5] Because the Philadelphia Police Department has no independent corporate existence, 53 Pa. Cons. Stat. § 16257, the Court treats all claims against the Police Department as claims against the City. The Court does the same for any claims Ituah purports to assert against City employees in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[6] Ituah claims the City and individual employees "were guilty of malice and oppression as defined in civil code section 3294-3296." (*Id.* at ¶ 8.) The Court is unsure which "civil code" Ituah references. In any future pleadings, Ituah is directed to specifically cite the relevant civil code supporting his claim.

12

IV

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has instructed district courts to "offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Because Ituah's claims against Zwolak and Sanchez as to the 3843 Fairmount Avenue property are barred under *res judicata* or the statute of limitations, amending those claims would be futile. Similarly, it would be futile to allow amendment of Ituah's tax-based claim for damages against Sanchez because he cannot pursue that claim in federal court. For the remaining claims, however, amendment would be neither inequitable nor futile. Ituah is therefore again granted leave to amend those claims.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.