## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ABRAHAM ITUAH,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 19-5088** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Pamela Thurmond, Brendan J. Philbin, and Joseph Carrol, by and through the undersigned counsel, hereby file this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In support of this motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court dismiss the claims asserted against them with prejudice.

Date: September 12, 2023

Respectfully submitted,

*/s/ Michael Pfautz*
Michael Pfautz
Deputy City Solicitor
Pa. Attorney ID No. 325323
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-5233
michael.pfautz@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ABRAHAM ITUAH,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 19-5088** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
<u>FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

I.   BACKGROUND AND PROCEDURAL HISTORY ........................................... 1

   A.   Ituah's 2018 New York Bankruptcy ......................................................... 1

   B.   The Demolition of the Tabor Property ....................................................... 2

   C.   Ituah's 2020 Pennsylvania Bankruptcy ..................................................... 4

   D.   The Instant Litigation ................................................................................. 5

II.  LEGAL STANDARDS ...................................................................................... 6

   A.   Summary Judgment .................................................................................... 6

   B.   Absolute Immunity ..................................................................................... 7

III.  ARGUMENT ...................................................................................................... 9

   C.   Ituah's Takings Claim Fails as a Matter of Law ...................................... 10

      1.   No Taking Occurred Because Ituah's Property Was Demolished Under the City's Police Power ........................................................................................... 10

      2.   Philbin and Carroll Are Entitled to Qualified Immunity ........................... 13

      3.   Philbin Is Entitled to Absolute Immunity ................................................... 17

   D.   Ituah's First Amendment Claim Fails as a Matter of Law ........................ 18

IV.  CONCLUSION ................................................................................................. 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3909 Realty LLC v. City of Philadelphia,*
  2021 WL 2342929 (E.D. Pa. June 8, 2021)........................................................ 10

*AmeriSource Corp. v. United States,*
  525 F.3d 1149 (Fed. Cir. 2008) ...................................................................... 12

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ................................................................................ 14, 15

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................... 7

*Ashcroft v. al–Kidd,*
  563 U.S. 731 (2011) ................................................................................... 14

*Baloga v. Pittston Area Sch. Dist.,*
  927 F.3d 742 (3d Cir. 2019) .......................................................................... 18

*Barrett v. United States,*
  798 F.2d 565 (2d Cir. 1986) ........................................................................ 7, 8

*Bennis v. Michigan,*
  516 U.S. 442 (1996) ................................................................................... 12

*Bryen v. Becker,*
  785 F. Supp. 484 (D.N.J. 1991) .................................................................... 8, 9

*Butz v. Economou,*
  438 U.S. 478 (1978) ............................................................................... 7, 8, 9

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) .................................................................................... 6

*Charter Oak Ins. Co. v. Maglio Fresh Food,*
  979 F. Supp. 2d 581 (E.D. Pa. 2013)................................................................. 6

*Doheny v. Pennsylvania,*
  781 Fed. App'x 106 (3d Cir. 2019) ................................................................... 8

*Duffy v. Kent Cnty. Levy Court,*
  591 Fed. App'x 41 (3d Cir. 2014) ................................................................... 10

*Estate of Smith v. Marasco,*
  318 F.3d 497 (3d Cir. 2003) .......................................................................... 21

*F.T.C. v. Commonwealth Marketing Group, Inc.,*
  72 F. Supp. 2d 530 (W.D. Pa. 1999) ................................................................. 9

*Fry v. Melaragno,*
  939 F.2d 832 (9th Cir. 1991) ..................................................................... 7, 8, 9

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.,*
  337 F.3d 297 (3d Cir. 2003) ........................................................................... 7

*George v. Rehiel,*
  738 F.3d 562 (3d Cir. 2013) .......................................................................... 13

*Graham v. Connor,*
  490 U.S. 386 (1989) ................................................................................... 15

*In re 106 North Walnut, LLC,*
  447 Fed. App'x 305 (3d Cir. 2011) .................................................................. 10

*Ituah v. City of Philadelphia*,
  2022 WL 4464380 (3d Cir. Sept. 26, 2022) ........................................... 6, 17
*Johnson v. Manitowoc Cnty.*,
  635 F.3d 331 (7th Cir. 2011) ........................................................... 12, 13
*Kedra v. Schroeter*,
  876 F.3d 424 (3d Cir. 2017) ............................................................ 15, 16
*Kelly v. Borough of Carlisle*,
  622 F.3d 248 (3d Cir. 2010) ................................................................. 15
*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
  480 U.S. 470 (1987) ........................................................................... 11
*L.R. v. Sch. Dist. of Phila.*,
  836 F.3d 235 ..................................................................................... 14
*Lech v. Jackson*,
  791 Fed. App'x 711 (10th Cir. 2019) ..................................................... 11
*Light v. Haws*,
  472 F.3d 74 (3d Cir. 2007) ..................................................................... 8
*Malley v. Briggs*,
  475 U.S. 335 (1986) ....................................................................... 15, 17
*McKenna v. Portman*,
  538 Fed. App'x 221 (3d Cir. 2013) ........................................................ 12
*Merritts v. Richards*,
  62 F.4th 764 (3d Cir. 2023) .................................................................. 16
*Messerschmidt v. Millender*,
  565 U.S. 535 (2012) ....................................................................... 15, 17
*Michtavi v. Scism*,
  808 F.3d 203 (3d Cir. 2015) .................................................................. 14
*MRO Corp. v. Humana Inc.*,
  383 F. Supp. 3d 417 (E.D. Pa. 2019) ........................................................ 6
*Mullenix v. Luna*,
  136 S.Ct. 305 (2015)................................................................. 14, 16, 17
*Munoz v. City of Union City*,
  481 Fed. App'x 754 (3d Cir. 2012) ......................................................... 17
*Nat'l Amusements Inc. v. Borough of Palmyra*,
  716 F.3d 57 (3d Cir. 2013) .................................................................... 10
*Olson v. Ako*,
  724 Fed. App'x 160 (3d Cir. 2018) ......................................................... 15
*Pearson v. Callahan*,
  555 U.S. 223 (2009) ............................................................................ 14
*Ray v. Twp. of Warren*,
  626 F.3d 170 (3d Cir. 2010) .................................................................. 15
*Rode v. Dellarciprete*,
  845 F.2d 1195 (3d Cir. 1988) ................................................................ 18
*Russell v. Richardson*,
  905 F.3d 239 (3d Cir. 2018) ................................................................... 7
*Schrob v. Catterson*,
  948 F.2d 1402 (3d Cir. 1991) ............................................................... 8, 9

*Spady v. Bethlehem Area Sch. Dist.*,
   800 F.3d 633 (3d Cir. 2015) ......................................................................... 14
*Spuck v. Pa. Bd. of Probation & Parole*,
   563 Fed. App'x 156 (3d Cir. 2014) ........................................................ 7, 8, 21
*Swinson v. City of Philadelphia*,
   2015 WL 4975077 (E.D. Pa. Aug. 19, 2015) ............................................... 10
*Talbert v. City of Philadelphia*,
   2018 WL 10498199,n.2 (E.D. Pa. 2018) ...................................................... 12
*Talbot v. United States*,
   2005 WL 2917463 (D.N.J. 2005) ..................................................................... 8
*Taylor v. Barkes*,
   135 S.Ct. 2042 (2015) ............................................................................. 14, 15
*United States v. Leon*,
   468 U.S. 897 (1984) ........................................................................................ 15
*Wallace v. Abell*,
   2008 WL 2833927 (E.D. Pa. 2008) ................................................................. 7
*Williams v. Consovoy*,
   453 F.3d 173 (3d Cir. 2006) ............................................................................. 7
*Win & Son, Inc. v. City of Philadelphia*,
   162 F. Supp. 3d 449 (E.D. Pa. 2016) .............................................................. 7
*Yarris v. Cnty. of Delaware*,
   465 F.3d 129 (3d Cir. 2006) ............................................................................. 9
*Zitter v. Petruccelli*,
   744 Fed. App'x 90 (3d Cir. 2018) ................................................................. 12

**Statutes**

11 U.S.C. § 362(b)(4) ......................................................................................... 20
42 U.S.C. § 1983 ................................................................................................. 18
PM Code §§ PM-101.3 ....................................................................................... 11
PM Code §§ PM-110.1 ....................................................................................... 11
PM Code §§ PM-110.2 ....................................................................................... 11

**Rules**

Fed. R. Civ. P 56(a) .............................................................................................. 6

v

Defendants Joseph Carroll, Brendan Philbin, and Pamela Thurmond seek summary judgment on Plaintiff Abraham Ituah's remaining claims in this lawsuit that Carroll and Philbin committed a Taking when they demolished Ituah's structurally damaged apartment building and that Thurmond retaliated against Ituah because he did not consent to her request to attend a bankruptcy hearing by telephone. With discovery complete, the undisputed record shows that Ituah's structure was a safety hazard and that Thurmond did not take any of the negative actions Ituah alleges. Further, Carroll and Philbin are entitled to qualified immunity because they acted reasonably based on a court order approving the demolition, and, as government attorneys, Philbin and Thurmond are entitled to absolute immunity from claims based on their actions when litigating for the government. Because Ituah's claims fail as a matter of law, the Court should grant summary judgment in favor of Defendants.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.  Ituah's 2018 New York Bankruptcy

On March 16, 2018, Plaintiff Abraham Ituah filed Chapter 13 bankruptcy as an individual in the Southern District of New York (the "New York Bankruptcy"). (*See* Defs.' Concise Statement of Material Facts ("Defs.' Facts") ¶ 14). The City, one of Ituah's creditors, was represented by one of its in-house bankruptcy attorneys, Pamela Elchert Thurmond. (*See id.* ¶ 15). Because the case was in New York, Thurmond requested that Ituah consent to allow her to appear by telephone, but Ituah declined. (*See id.* ¶ 16). As a result, Thurmond attended one hearing in the New York Bankruptcy in person on October 20, 2018. (*See id.* ¶ 17). The New York Bankruptcy was subsequently dismissed on December 10, 2018 based on Ituah's motion. (*See id.* ¶ 18).

While the New York Bankruptcy was pending, Thurmond became aware that the Philadelphia Sheriff's Office was holding excess proceeds owed to Ituah resulting from the

sheriff's sale of one of Ituah's former properties at 3843 Fairmount Avenue (the "Fairmount Property"). (*See id.* ¶ 19). When a property in Philadelphia is sold at a sheriff's sale for an amount greater than the debt being collected, the difference is distributed to other creditors after the payment of costs, and then to the property owner if any remains. (*See id.* ¶ 20). The Sheriff's Office determines which payments to make by ordering a title insurance policy for the property from a title insurance company that lists the distributees and the amounts owed, called a Title Distribution Policy. (*See id.* ¶ 21). According to the Title Distribution Policy for the Fairmount Property, Ituah was owed $11,112.54 in excess proceeds after creditors were paid. (*See id.* ¶ 22). Because Ituah had filed for bankruptcy, the funds were part of the bankruptcy estate, so Thurmond transmitted the funds to the bankruptcy trustee. (*See id.* ¶ 23). On August 8, 2018, Thurmond sent a letter to the trustee with the Sheriff's check for the excess proceeds and a copy of the Title Distribution Report. (*See id.* ¶ 24). Thurmond had no role or involvement in the determination of the amount of excess proceeds owed to Mr. Ituah, and no court order prohibited the Sheriff's actions or the transmittal of the funds to the trustee. (*See id.* ¶¶ 25-26).

**B.  The Demolition of the Tabor Property**

On December 27, 2018, City of Philadelphia Department of Licenses and Inspection ("L&I") Inspector Joseph Carroll issued a Notice of Violation for Ituah's property at 508 W. Tabor Road (the "Tabor Property"). (*See id.* ¶ 39). The Notice stated that L&I had determined the structure was "imminently dangerous" because the side bearing wall was not capable of supporting the load. (*Id.* ¶ 40).

On January 2, 2019, the City, by its attorney Brendan Philbin, filed a Petition for a Temporary Restraining Order and Preliminary Injunction in Philadelphia Court of Common

Pleas to allow the City to demolish the Tabor Property. (*See id.* ¶ 41). The following day, Plaintiff filed a response in opposition to the City's petition. (*See id.* ¶ 42).

At the hearing on the City's petition to demolish the structure, another City building inspector, Thomas Rybakowski, testified that he had also inspected the structure and seen the bulging side wall. (*See id.* ¶ 43). Rybakowski described how the wall had separated from the window by several inches, indicating that the "wall ha[d] lost all of its structural integrity." (*Id.* ¶ 44). Rybakowski also described how the bracing of the wall was not permitted and had been improperly performed because it was simply nailed into the sidewalk, rather than anchored into an anchor point on the ground such as rebar and only supported the wall in one small section. (*See id.* ¶ 45). Rybakowski further described his observations that the third floor of the structure had been illegally added without a permit, thereby increasing the weight load on the failing wall. (*See id.* ¶ 46). Rybakowski's overall conclusion was that these conditions presented "the potential of a very serious collapse" that would pose a danger to the public, remaining occupants of the property, and the adjoining properties. (*Id.* ¶ 47). Inspector Rybakowski also introduced photos showing the conditions he described. (*See id.* ¶ 48). Although Ituah testified that the Tabor Property could be repaired, he did not present any evidentiary support for this claim or expert testimony. (*See id.* ¶ 49).

Based on this record, the Court of Common Pleas found that the structure was imminently dangerous and that demolition was appropriate. (*See id.* ¶ 50). After a hearing, the court entered an order authorizing the City to demolish the property and for the Police Department to remove any occupants. (*See id.* ¶ 51).

Plaintiff appealed the order to the Commonwealth Court the following day but did not seek a stay. (*See id.* ¶ 52). The City demolished the property on January 11, 2019. (*See id.* ¶ 53).

Plaintiff subsequently failed to file a required Statement of Issues on Appeal, (*see id.* ¶ 54), and as a result the state appellate court quashed Plaintiff's appeal on May 10, 2019, (*see id.* ¶ 55). On July 8, 2019, Plaintiff filed a Petition for Leave to File a Petition for Allowance of Appeal *Nunc Pro Tunc* with the Pennsylvania Supreme Court, which that court denied on October 1, 2019. (*See id.* ¶ 56).

### C.  Ituah's 2020 Pennsylvania Bankruptcy

Ituah filed another bankruptcy case on January 6, 2020 in the Eastern District of Pennsylvania (the "Pennsylvania Bankruptcy"). (*See id* ¶ 27). Because Ituah had outstanding debts to the City, the City was notified as a creditor and Thurmond was assigned the case. (*See id.* ¶ 28). On behalf of the City, Thurmond filed proof of claims on January 15 and 22, 2020 for water debts. (*See id.* ¶ 29). Another proof of claim for Ituah's tax debts owed to the City (the "Tax Proof of Claim") was filed on behalf of the City through another attorney on January 29, 2020. (*See id.* ¶ 30). The Tax Proof of Claim indicated that the claims were secured by Ituah's real estate and attached as an exhibit a list of properties owned by Ituah along with valuations of each property. (*See id.* ¶ 31). The exhibit lists a property at 33 S 53rd Street with a valuation of $210,355.00. (*See id.* ¶ 32). Thurmond did not prepare this exhibit or file this exhibit and is unaware of any inaccuracy within it. (*See id.* ¶ 33).

On March 5, 2020, the trustee moved to dismiss the bankruptcy based on the debtor's failure to obtain insurance for his properties, but the motion was later withdrawn. (*See id.* ¶ 34). On March 29, 2018, Ituah filed his proposed bankruptcy Plan. (*See id.* ¶ 35).  On July 7, 2020, Thurmond filed an objection to the confirmation of Ituah's Plan based in part on its failure to provide for full payment on the City's claims. (*See id.*). As part of the objection Thurmond filed,

she referenced the Tax Proof of Claim and attached a copy as an exhibit, but the objection itself did not refer to the valuation of the Tabor Property. (*See id.* ¶ 36).

On August 18, 2020, the bankruptcy trustee filed another motion to dismiss the bankruptcy, this time due to delay, and which was granted on September 23, 2020. (*See id.* ¶ 37). Thurmond did not file any motion to dismiss the bankruptcy case. (*See id.* ¶ 38).

### D.  The Instant Litigation

On November 7, 2019, Plaintiff filed the first Complaint in this case. The City moved to dismiss the Complaint under Rules 12(b)(1) and (6). The Court granted the City's motion for failure to state a claim, dismissing several of Plaintiff's claims with prejudice while granting leave to amend as to others. (*See* Mar. 26, 2020 Mem. at 8,[1] ECF No. 8).

On October 8, 2020, Plaintiff filed an amended complaint claiming violations of his constitutional rights under 42 U.S. § 1983. The Amended Complaint raised claims against the City and various employees. (Am. Compl. ¶ 2, ECF No. 12). Among was a claim that City attorney Brendan Philbin and Department of Licenses and Inspections (L&I) Inspector Joseph Carrol violated Plaintiff's Fourth and Fifth Amendment rights through their participation in the process leading to the demolition of the Tabor Property. (*Id.* ¶ 4). The Amended Complaint also alleged that City bankruptcy attorney Pamela Thurmond retaliated against Ituah in violation of the First Amendment because he did not consent to her attending hearings by telephone. (*Id.* ¶ 5).

The City moved to dismiss the Amended Complaint, and on December 29, 2020, this Court granted Defendants' Motion. (Dec. 29, 2020 Order, ECF 18). Ituah appealed, and while the Third Circuit largely affirmed this Court's decision, including dismissing all claims against the City itself, the Court of Appeals vacated this Court's decision with respect to the Takings and

---

[1] Pagination for ECF documents refers to the ECF pagination.

First Amendment retaliation claims in an unpublished decision. *Ituah v. City of Philadelphia*, No. 21-1213, 2022 WL 4464380, at *5 (3d Cir. Sept. 26, 2022). As to the Takings claim in particular, the Court of Appeals vacated on the basis that this Court had dismissed Plaintiff's Takings claim as unripe based on case law that the Supreme Court had overruled in the interim. *Id.* at *3.

On December 5, 2022, this Court ordered Defendants to file a response to the Amended Complaint, (ECF No. 24), and Defendants answered on December 19, 2022 (ECF No. 25). The parties conducted discovery, and all Defendants now move for summary judgment on both remaining claims.

## II.    LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment should be granted "if the movant can show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Charter Oak Ins. Co. v. Maglio Fresh Food*, 979 F. Supp. 2d 581, 592 (E.D. Pa. 2013) (quoting Fed. R. Civ. P 56(a)). In deciding summary judgment, "a court must view the facts in the light most favorable to the non-moving party, and make every reasonable inference in that party's favor." *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 421 (E.D. Pa. 2019) (internal quotations marks and citation omitted).

Once the moving party has met its initial burden, the non-moving party must then designate facts that show there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "While it is not a court's role to make credibility determinations or weigh the evidence, a court must assess 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

*Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 457–58 (E.D. Pa. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

### B.  Absolute Immunity

"[O]fficials whose special functions require a full exemption from liability" have absolute immunity from suit under Section 1983. *Butz v. Economou*, 438 U.S. 478, 508 (1978). This doctrine—sometimes called quasi-judicial or prosecutorial immunity—evolved from the common law concept of judicial immunity, which recognizes that judicial officers require absolute immunity to perform their duties "'without harassment or intimidation' in those 'controversies sufficiently intense to erupt in litigation.'" *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (quoting *Butz*, 438 U.S. at 512). Because courts recognized that "[t]he fair administration of justice depends not only on judges" but also "certain others who perform functions closely associated with the judicial process," this immunity has been extended over time to protect a range of "judicial actors." *Id.* (citations omitted).

Among these types of officials are government attorneys litigating on behalf of the government when liability allegedly stems from that conduct. *See, e.g.*, *Spuck v. Pa. Bd. of Probation & Parole*, 563 Fed. App'x 156, 158 (3d Cir. 2014) (unpublished) (citing *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006); *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991)); *Wallace v. Abell*, No. 07-4918, 2008 WL 2833927, at *3 (E.D. Pa. 2008) (dismissing claims "based on actions taken in another case . . . . aris[ing] in the context of defending [government defendants] . . . [a]s protected by the judicial privilege and absolute immunity" (citing *Gen. Refractories Co. v. Fireman's Fund Ins.*

*Co.*, 337 F.3d 297, 311–12 (3d Cir. 2003); *Barrett*, 798 F.2d at 572)). As the Second Circuit in

*Barrett* explained,

> The controversial nature of the proceeding, the risk that a losing civil
> defendant will seek to retaliate by a suit attacking the propriety of
> the government attorney's conduct, and the existence of alternative
> safeguards against the attorney's misconduct (e.g., professional
> disciplinary proceedings, discovery and cross-examination) militate
> in favor of absolute immunity.

798 F.2d at 572 (immunizing state civil attorney defending wrongful death suit); *see also Bryen*

*v. Becker*, 785 F. Supp. 484, 487 (D.N.J. 1991) ("If every government attorney involved in a

civil matter were to be subject to suit, and his actions were scrutinized for any possible

constitutional error, then the efficacy of these officials would surely be compromised.").

And while the most common example of officials enjoying this immunity is criminal

prosecutors, *Butz* involved an "agency attorney who had prosecuted [an administrative]

enforcement hearing," 438 U.S. at 482, and subsequent caselaw has recognized that this category

also includes government defense counsel, *Doheny v. Pennsylvania*, 781 Fed. App'x 106, 113

(3d Cir. 2019) (attorneys defending department of transportation's driver's license suspension

immune), and "government attorneys involved in civil tax litigation in a state or federal court,"

*Spuck*, 563 Fed. App'x at 158 (citing *Fry*, 939 F.2d at 837). *See also Light v. Haws*, 472 F.3d 74,

79 (3d Cir. 2007) (applying absolute immunity to attorney for state environmental protection

department's "actions in bringing any of the civil petitions against [Section 1983 plaintiff]"

because they "are precisely the type of actions that absolute immunity is designed to protect");

*Schrob v. Catterson*, 948 F.2d 1402, 1410 (3d Cir. 1991) (applying immunity to federal

prosecutor's initiation of civil *in rem* proceedings because "an Assistant United States Attorney

is not only a prosecutor, but also the government's advocate in civil litigation"); *Talbot v. United*

*States*, No. No. 05–CV–00768 (WJM), 2005 WL 2917463, at *4 (D.N.J. 2005) (holding federal

ICE attorney had absolute immunity for "defend[ing] various motions [plaintiff] filed with the Immigration Court and the BIA" in deportation proceedings); *F.T.C. v. Commonwealth Marketing Group, Inc.*, 72 F. Supp. 2d 530, 538 (W.D. Pa. 1999) (holding FTC enforcement attorneys were "entitled to absolute immunity with respect to their roles in seeking the TRO, including the misstatement of facts to the court" (citing *Schrob*)); *Bryen*, 785 F. Supp. at 486-87 (applying absolute immunity to IRS attorneys who proposed settlement of potential tax liability).

> Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is "necessary to assure that . . . advocates . . . can perform their respective functions without harassment or intimidation." *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913. Given the similarity of functions of government attorneys in civil, criminal and agency proceedings, and the numerous checks on abuses of authority inherent in the judicial process, we reiterate our statement in *Flood* that "[t]he reasons supporting the doctrine of absolute immunity apply with equal force regardless of the nature of the underlying action." 532 F.2d at 1251 (citation omitted). If the government attorney is performing acts 'intimately associated with the judicial phase" of the litigation, that attorney is entitled to absolute immunity from damage liability.

*Fry*, 939 F.2d at 837.

The immunity applies to actions taken as the government's advocate in preparation for or during adjudicatory proceedings, as opposed to investigatory functions or administrative duties. *See, e.g.*, *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 135-36 (3d Cir. 2006).

## III.   ARGUMENT

Defendants are entitled to summary judgment on both of Plaintiff's remaining claims for multiple, independent reasons. First, there is no dispute that the City demolished the Tabor Property pursuant to its police powers, not eminent domain, so as a matter of law no Takings Claim can lie. Second, Philbin and Carroll are entitled to qualified immunity as to Ituah's claim because there can be no genuine dispute that they acted reasonably to demolish a dangerous

structure pursuant to judicial authorization received after an adversarial hearing. Third, Ituah's

retaliation claim against Thurmond fails as a matter of law because there is no evidence that

Thurmond took any of the retaliatory actions alleged. Finally, both she and Philbin are entitled to

absolute immunity from the portions of Ituah's claims that are based on their conduct as

attorneys for the government.

### C.  Ituah's Takings Claim Fails as a Matter of Law

#### 1.  No Taking Occurred Because Ituah's Property Was Demolished Under the City's Police Power

Philbin and Carroll are entitled to judgment as a matter of law because the City

demolished the Tabor Property under its police powers to protect health and safety, meaning that

the Takings Clause is not implicated and no compensation is owed.

The Takings Clause of the Fifth Amendment states that "private property [shall not] be

taken for public use, without just compensation." However, "the demolition of a dangerous

building involves the exercise of the City's police power and not its eminent domain power."

*Swinson v. City of Philadelphia*, No. 13-6870, 2015 WL 4975077, at *7 n.5 (E.D. Pa. Aug. 19,

2015) (citing *Nat'l Amusements Inc. v. Borough of Palmyra,* 716 F.3d 57, 63 (3d Cir. 2013);

*Duffy v. Kent Cnty. Levy Court,* 591 Fed. App'x 41, 44 (3d Cir. 2014)); *see also In re 106 North*

*Walnut, LLC*, 447 Fed. App'x 305, 309 (3d Cir. 2011) ("[W]here, as here, an unsafe structure is

demolished based on the separate and legitimate purpose of promoting public safety,

compensation under the Takings Clause is not available." (citations omitted)); *3909 Realty LLC*

*v. City of Philadelphia*, No. 21-0030, 2021 WL 2342929, at *5 (E.D. Pa. June 8, 2021)

("[P]roperty is not 'taken' where a city or other appropriate public authority has acted pursuant

to its right and obligation to ensure public safety in remediating a dangerous condition."). Thus,

no Takings claim will lie where the government acts pursuant to its police power. *See, e.g.*,

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 490 (1987) (reiterating that no compensation is owed where state acts pursuant to police power to prevent "impending danger").[2]

Section 110 of the Philadelphia Property Maintenance Code (the "PM Code") exists "to ensure public health, safety and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises" and governs the inspection, citing, noticing, and demolition of imminently dangerous structures. *See* PM Code §§ PM-101.3, PM-110 *et. seq.*[3] Code officials for the City are authorized to inspect buildings and classify them as "Imminently Dangerous" if, in their opinion, any part of the structure is in imminent danger of collapse which endangers life. *Id.* at § PM-110.1. An Imminently Dangerous structure is defined as when there is "imminent danger of failure or collapse of a structure or any part thereof which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure." *Id.* If the code official determines that a building is Imminently Dangerous, they are then required to notify the property owner in writing with a description of the imminently dangerous condition, specifying the required repair to make, or requiring the imminently dangerous structure to be demolished within a stipulated time. *Id.* at § PM-110.2.

As an initial matter, the Court need not consider the actual condition of the structure on Ituah's property to reject his Takings claim as a matter of law. The fact that Philbin and Carroll sought the demolition pursuant to the City's Property Maintenance code—that is, for a public

---

[2] For example, courts have rejected Takings claims where law enforcement virtually destroyed homes in pursuit of suspects posing a threat to the public. *See, e.g.*, *Lech v. Jackson*, 791 Fed. App'x 711, 712 (10th Cir. 2019).

[3] The PM Code is a subcode of Title 4 of the Philadelphia Code and is available online at the following site: https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-271349.

safety purpose rather than for public use—is enough to place their actions outside of the Takings Clause. Even where the government physically possesses or destroys property, that action does not raise "a viable Takings claim" where it is performed pursuant to "'the exercise of governmental authority other than the power of eminent domain.'" *Zitter v. Petruccelli*, 744 Fed. App'x 90, 96 (3d Cir. 2018) (unpublished) (quoting *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)); *accord McKenna v. Portman*, 538 Fed. App'x 221, 224 (3d Cir. 2013) (unpublished); *Talbert v. City of Philadelphia*, No. 18-1501, 2018 WL 10498199, at *1 n.2 (E.D. Pa. 2018); *see also Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 336 (7th Cir. 2011) "[T]he Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." (citing *AmeriSource Corp. v. United States,* 525 F.3d 1149, 1154 (Fed. Cir. 2008)); *AmeriSource*, 525 F.3d at 1153 ("[I]tems properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment." (citations omitted)). There is no question here that Philbin and Carroll did not exercise the City's power of eminent domain to take Ituah's property—which he continues to own—for public use; therefore Ituah's Takings claim fails as a matter of law.

In addition, the record here is undisputed that the structure on Ituah's property was Imminently Dangerous. First, multiple City building inspectors determined that the structure was "Imminently Dangerous" because the side bearing wall was not capable of supporting the load. (*See supra* Part I.B; Defs.' Facts ¶¶ 39-40, 43). At the hearing on the City's motion to demolish the structure, Inspector Thomas Rybakowski testified in detail about the building's structural problems and the danger it posed, including how the wall had separated from the window by several inches meaning it "ha[d] lost all of its structural integrity." (*See* Defs.' Facts ¶¶ 43-47).

12

Inspector Rybakowski also introduced photos showing the conditions he described. (*See* Ex. 7). Based on this record, the Court of Common Pleas found that the structure was imminently dangerous and that demolition was appropriate. (*See* Defs.' Facts ¶¶ 50-51).

Although Ituah disputed the imminence of the danger, he admits the building was damaged as the City described and presented no evidence to the contrary.[4] (*See id.* ¶ 49). Even now, he does not contest the dangerousness of the structure, only that it was "fixable damage." (Am. Compl. ¶ 4 at 3). But the reasonableness of the government's action pursuant to the police power is a Fourth Amendment question, not a Takings claim. *See, e.g.*, *Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 335 (7th Cir. 2011). And there is no evidence in the record that calls into question the imminent dangerousness of the structure when it was demolished. As a result, the City properly exercised its police power to demolish a dangerous structure and no Taking occurred.

### 2. Philbin and Carroll Are Entitled to Qualified Immunity

Ituah's Takings claim also fails as a matter of law because Philbin and Carroll are entitled to qualified immunity because they acted pursuant to a judicial authorization and there was and is no clearly established a right against judicially authorized demolitions of admittedly damaged buildings.

Qualified immunity shields a government official from federal claims unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotation marks omitted). To resolve a claim of qualified immunity, courts engage in a two-pronged

---

[4] Although Ituah has referred to having hired an engineer, he did not provide any report to the City prior to demolition or at the hearing or repair the structure. (*See* Defs.' Facts ¶ 49).

inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the official's conduct. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *see also Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015). A right only qualifies as clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). While courts do not require a case directly on point, existing precedent "must have placed the statutory or constitutional question beyond debate." *Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015), *see also Ashcroft v. al–Kidd*, 563 U.S. 731 (2011).

Moreover, the Supreme Court has repeatedly directed the courts "not to define clearly established law at a high level of generality," but instead to define the right allegedly violated at the appropriate level of specificity. *Mullenix*, 136 S.Ct. at 308; *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (citing *al-Kidd*, 131 S.Ct. at 2084). For example, although the Supreme Court has noted that "the right to due process of law is quite clearly established by the Due Process Clause . . . [and] [m]uch the same could be said of any other constitutional . . . violation," it held that that simply cannot be the test of "clearly established law," lest "Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This has led the Third Circuit, for example, to define the right at issue in a substantive-due-process deliberative-indifference case as "as an individual's right not to be subjected, defenseless, to a police officer's demonstration of the use of deadly force in a manner contrary to all applicable safety protocols." *Kedra v. Schroeter*, 876 F.3d 424, 449 (3d Cir. 2017).

The reason for this is because the qualified immunity standard leaves ample room for mistaken judgments. *Id*. at 254. Therefore, "if a reasonable officer is not on notice that his or her conduct under the circumstances is clearly unlawful, then the application of qualified immunity is appropriate." *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010). An official's actions are judged from the perspective of an "objectively reasonable [state actor] under the circumstances, and we endeavor to avoid hindsight." *Id*. at 174 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Qualified immunity is broad in scope and "protects all but the plainly incompetent or those who knowingly violate the law." *Taylor*, 135 S.Ct. at 2044.

One example of this is in the search warrant context. A Section 1983 plaintiff can bring a claim under the Fourth Amendment against government officials who conducted a search that the plaintiff contends is unreasonable, i.e., without probable cause. *Olson v. Ako*, 724 Fed. App'x 160, 166 (3d Cir. 2018) (unpublished) (citing *Anderson*, 483 U.S. at 640-41). But where the search performed received judicial approval in the form a search warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *United States v. Leon,* 468 U.S. 897, 922–23 (1984)). Acting pursuant to judicial approval confers immunity unless "'it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

Here, Ituah has not defined with specificity the right he claims was violated beyond "property ownership." (Am. Compl. ¶ 4). Such an assertion is far too general for the qualified immunity analysis. *See, e.g. Mullenix*, 136 S. Ct. at 308; *Kedra*, 876 F.3d at 449 (defining right

15

as "as an individual's right not to be subjected, defenseless, to a police officer's demonstration of the use of deadly force in a manner contrary to all applicable safety protocols"). Taking the allegations of the Complaint as true for argument's sake, Plaintiff acknowledges that his property was "damage[d]" but the crux of his claim is that this damage was "fixable" such that demolition was not absolutely required. (Am. Compl. ¶ 4). Plaintiff also acknowledges that the City sought judicial approval for the demolition and that judicial approval was granted after an adversarial hearing. (*See id.* (alleging "Philbin . . . pressed to obtain judgment to demolish" and after it was granted "Plaintiff immediately filed [an] appeal"; *see also* Defs.' Facts ¶¶ 41-51). Given that, Plaintiff must show that it is clearly established that demolishing a damaged but fixable building with judicial approval constituted a Taking rather than a permissible exercise of the police power.

However, thus far in his filings and briefing before this Court and the Court of Appeals Ituah has failed to identify <u>any</u> case doing so. Nor are Defendants aware of any case with a holding to that effect. That alone is fatal to Ituah's claim.[5]

What's more, even defining Plaintiff's right at an impermissible, higher level of generality does not save his claim. Even if we assume, in the absence of cited precedent, that it is clearly established that a government commits a Taking when it demolishes a repairable building, Plaintiff cannot show that "every reasonable official would have understood that" demolishing the Tabor Property" violate[d] that right." *Mullenix*, 136 S. Ct. at 308 (2015). Plaintiff admits the Tabor Property was damaged and that the court approved the demolition. Just as in the search warrant context, judicial approval here establishes that reasonable officials would

_____

[5] It is not even clearly established that a takings action can be brought against a state official in an individual capacity. *See Merritts v. Richards*, 62 F.4th 764, 776 (3d Cir. 2023) (noting "[t]hat is an open question in this Circuit").

*not* have known that they were violating Plaintiff's rights. *E.g., Messerschmidt*, 565 U.S. at 546.

Nor do any of the facts in the Amended Complaint or record suggest that it would have been

unreasonable for City officials to rely on the court's order approving the demolition. *See, e.g.*,

*Malley*, 475 U.S. at 345; *see also Munoz v. City of Union City*, 481 Fed. App'x 754, 760 (3d Cir.

2012) ("Where 'the Building's structural instability posed an imminent threat to public safety,

we agree with the District Court that Martinetti acted reasonably in ordering the Building to be

demolished.'"). Ituah has previously complained that the demolition occurred despite his filing

of a notice of appeal, (ECF No. 16 at 9), but he did not seek to stay the trial court's order, (Defs.'

Facts ¶ 52). In fact, the Court of Appeals affirmed this Court's dismissal of Plaintiff's Fourth

Amendment claim, implicitly finding that Philbin and Carroll's actions were reasonable. *See*

*Ituah v. City of Philadelphia*, 2022 WL 4464380, at *3; Dec. 29, 2020 Mem. at 9 (ECF 17).

Because Plaintiff has not alleged any clearly established right violated by Philbin and

Carroll, they are entitled to qualified immunity and summary judgment.

### 3.  Philbin Is Entitled to Absolute Immunity

Philbin is also entitled to absolute immunity from Ituah's Takings claim because it is

based on Philbin's actions taken in the course of litigating on behalf of the government. Ituah's

Takings Claim as to Philbin is entirely premised on Philbin's role in obtaining a court order

authorizing the City's demolition of the Tabor Property. (Am. Compl. ¶ 4 at 2-3). Philbin only

filed a complaint and motion, appeared at the hearing, and successfully obtained the court's

approval. (Defs.' Facts ¶¶ 41-43). There is no claim he was involved in the initial investigation

or that he was involved in the demolition process beyond obtaining the court order. (Am. Compl.

¶ 4 at 2-3). Because the claim against Philbin is only based on his conduct as a government

attorney litigating on behalf of the government, he has absolute immunity. *See supra* Part II.B.

### D.  Ituah's First Amendment Claim Fails as a Matter of Law

Ituah's First Amendment claim against Thurmond for alleged retaliation fails as a matter of law for two reasons. First, while Ituah alleges Thurmond took various actions—such as delivering a check—the record shows that Thurmond had nothing to do with the allegedly retaliatory aspect of that action—such as lowering the amount of the check. As a result, Ituah has not shown Thurmond engaged in retaliatory action or any causal connections thereto. Second, Thurmond has absolute immunity from Ituah's claims based on alleged conduct in bankruptcy proceedings. Because it is undisputed that Thurmond was not involved in any alleged retaliatory action and she has official immunity, she is entitled to judgment as a matter of law.

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) he engaged in 'constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citations, footnotes, and internal quotation marks omitted). A "defendant in a civil rights action must have personal involvement in the alleged wrongs" of the case in order to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

In his Amended Complaint, Ituah claims that Thurmond retaliated against him because he "filed bankruptcy in New York State and she was comp[elled] to personally attend all hearings because Plaintiff declined to have a telephone hearing." (Am. Compl. at 3 ¶ 5). Ituah filed his New York Bankruptcy action on March 16, 2018, Thurmond attended a single in-person hearing, and the case was subsequently dismissed at Ituah's request on December 11, 2018. (Defs.' Facts ¶¶ 14-18). Ituah alleges that Thurmond took the following actions in retaliation:

1.  "encouraged the licensing units to demolish Plaintiff building";

2. "refunded $11,112.54 on August 2018 contrary to court order issued on 2015" for "property at 3843 Fairmount Avenue [that] was sold for $34500"

3. "pressed the bankruptcy court to dismiss Plaintiff['s] bankruptcy [case] filed on January 6[,] 2020 based on inaccurate personal income tax claims that the city generated from 2005 through 2020 at the time plaintiff was not a residence of Philadelphia";

4. "presented to the bankruptcy court the assessed value of 33 S 53RD Street, Philadelphia for $210,000 to deceive the bankruptcy Trustee";

5. "payments received from escrow after settlements were not updated and the city continues to create bills and claims already paid"; and

6. "engineered inaccurate bills collections";

(Am. Compl. at 3-4 ¶ 5).

Ituah's primary basis for alleging retaliation is a baseless allegation that Thurmond was connected to the demolition of the Tabor property. (Am. Compl. at 4 ¶ 5). Thurmond specifically denies taking any action against Ituah because of his request for in-person hearings. (Defs.' Facts ¶ 65). In particular, she had no knowledge of the Tabor property's violation and demolition until this case was filed, and Ituah has elsewhere acknowledged that the violation and demolition actions were in fact prompted by police observing the condition of the structure. (*Id.* ¶¶ 57-60). While Ituah has suggested the short span of time between the end of his New York bankruptcy case and the demolition is suspicious, this is based on mere conjecture and also a misconception about bankruptcy law. Ituah seems to believe that the demolition could not occur during the bankruptcy because of the automatic bankruptcy stay on litigation, which is why he believes the demolition occurred when it did (after the end of the New York Bankruptcy). But the demolition could have occurred during the course of the bankruptcy case because there is an exception to the automatic stay for government regulatory action, such as the demolition of an unsafe building to protect health and safety. *See* 11 U.S.C. § 362(b)(4) (providing exception for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce

19

such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power"). Also, the record is undisputed that Thurmond did not in any way cause the demolition of the Tabor Property.

The next action Ituah alleges was retaliatory was the amount of excess proceeds he received from the sheriff's sale of the Fairmount Property. Ituah complains that the amount of the August 2018 excess proceeds check Thurmond conveyed to the bankruptcy trustee from the sheriff's sale was too low and contrary to an unidentified court order in 2015. (Am. Compl. at 4). But the $11,112.54 amount of the check matches the amount shown as excess proceeds on the Title Distribution Report. (Defs.' Facts ¶ 22). No court order on the docket provides otherwise. (*Id.* ¶ 26). Further, even if the amount were somehow wrong, Thurmond had no involvement in the determination of the amount by the Sheriff's Office and its third-party title contractor; Thurmond merely transmitted the check to the bankruptcy trustee because of her existing involvement in Ituah's bankruptcy case. (*Id.* ¶¶ 20-21, 24-25). Thus, the record is undisputed that while Thurmond mailed the check Ituah complains of, she did not retaliate against Ituah with respect to altering or influencing the amount of the excess proceeds check.

As to the next two alleged retaliatory actions—both allegedly taken in the course of Ituah's Pennsylvania bankruptcy filed in 2020—Thurmond is immune and there is no evidence of retaliation or causal connection. Ituah claims Thurmond moved to dismiss his third bankruptcy case allegedly based on inaccurate information and complains that the City's proof of claim included a somewhat inaccurate valuation for one of his properties. As a threshold matter, Thurmond is immune from these claims because they concern her alleged conduct as a

20

government attorney representing the government in litigation. *See, e.g., Spuck*, 563 Fed. App'x at 158. *See generally supra* Part II.B.

Next, the docket shows that it was the bankruptcy trustee—not the City or Thurmond— who moved to dismiss the case. (Defs.' Facts ¶¶ 37-38). Further, although in the City's plan objection, Thurmond briefly referenced the proof of claim with the valuation information of which Ituah complains, Thurmond did not prepare or file the proof of claim itself. (*See id.* ¶¶ 30-33, 36). Nor is there any evidence the information attached to the proof of claim was wrong or that Thurmond was aware of any error. (*See id.* ¶ 33). She did not file it in response to Ituah's allegedly protected conduct, (*id.* ¶ 65), and the approximately 19-month gap between the end of Ituah's second bankruptcy and when Thurmond referenced the document on July 7, 2020 defeats any inference of causation as to this alleged act based on timing alone. *See, e.g.*, *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (noting that for timing alone to be sufficient to establish a causal link, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive" and that such an inference could be drawn where two days passed between the protected activity and the alleged retaliation but not where 19 months had elapsed" (citations omitted)).

As to the final two alleged retaliatory actions above, Thurmond—a City bankruptcy attorney—simply had no involvement in any the alleged actions. She has no role in the process of crediting payments to accounts, and she had no communication with those who do. (*See* Defs.' Facts ¶ 63). She also has no role in the calculation or sending of utility and tax bills and had no communication about the amounts with those who do. (*Id.* ¶¶ 61-62). Ituah has essentially conceded this: when asked in discovery to identify the basis for his allegation that Thumond "engineered inaccurate bills collection," he explained that what he meant was that Thurmond

21

filed the "statement of claims presented to the bankruptcy court" that was based on allegedly inaccurate bills prepared by others. (Ex. 14 at 6 ¶ 4). There is no evidence that Thurmond knowingly or recklessly filed inaccurate proofs of claim (let alone that they were actually inaccurate), and to the extent this is Ituah's real claim, Thurmond is immune because any proofs of claim she filed would have been part of her representation of the government in litigation as discussed above.

Because there is no genuine dispute of material fact that Thurmond did not take the negative actions of which Ituah complains and has immunity from Ituah's bankruptcy-related claims, Thurmond is entitled to summary judgment on Ituah's First Amendment retaliation claim as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment in their favor on all of Plaintiff's claims.

Date: September 12, 2023                    Respectfully submitted,


                                            */s/ Michael Pfautz*
                                            Michael Pfautz
                                            Deputy City Solicitor
                                            Pa. Attorney ID No. 325323
                                            City of Philadelphia Law Department
                                            1515 Arch Street, 15th Floor
                                            Philadelphia, PA 19102
                                            215-683-5233
                                            michael.pfautz@phila.gov

22