# EXHIBIT "6"

# First Judicial District of Pennsylvania

*181203469*
*City Vs. Ituah*

_____

*Motion Volume 1*
*January 03, 2019*



_____

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File 2019-01-03^City-Ituah.txt, 27 Pages*
*CRS Catalog ID: 23050077*

## Page 1

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION
- - -

CITY OF PHILADELPHIA  :
  :
  :
  vs.  :
  :
ABRAHAM ITUAH  :
  : NO. 181203469
- - -

January 3, 2019
Courtroom 426-City Hall
Philadelphia, Pennsylvania
- - -

**BEFORE**: THE HONORABLE PAULA PATRICK, J.
- - -

## Page 2

**APPEARANCES**:

CITY OF PHILADELPHIA
LAW DEPARTMENT
**BY**: BRENDAN PHILBIN, ESQUIRE
Attorneys for the City of Philadelphia

Abraham Ituah, Pro Se

## Page 3

INDEX

| WITNESS | DR | CR | RDR | RCR |
|---|---|---|---|---|
| Thomas Rybakowski | 10 | 18 | | |

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| City 1 | Photographs | 12 |

## Page 4

**COURT CRIER**: Next, Number 25, City of Philadelphia versus Ituah, I-t-u-a-h, Docket No. 181203469.

All parties please step forward.
- - -
(Parties approach and stand at bar of court.)
- - -

**COURT CRIER**: Counsel, please state your name for the record.

**MR. PHILBIN**: Good afternoon, Your Honor. Brendan Philbin, for the City of Philadelphia.

**COURT CRIER**: Sir, state and spell your name for the record.

**MR. RYBAKOWSKI**: Thomas Rybakowski. T-h-o-m-a-s, R-y-b-a-k-o-w-s-k-i.

**COURT CRIER**: State and spell your name for the record.

**MR. ITUAH**: Abraham Ituah, A-b-r-a-h-a-m I-t-u-a-h.
- - -
THOMAS RYBAKOWSKI and ABRAHAM ITUAH, having been duly sworn, were examined and **testified as follows**:

Page 5

MR. PHILBIN: Good afternoon, Your Honor.

The City comes to you seeking an emergency order to demolish the property at 508 West Tabor Road. Your Honor, our evidence will show there is a three- to four-inch bulge in the wall. Additionally, there is a third floor that has been built without any permanent record. There is an illegal, unpermitted wooden bracing that was purportedly put there to hold up the wall. However, upon inspection and photographic evidence, you will see it's not flush against the wall. It's simply nailed into the sidewalk, where typically these are dug in and secured, and it's using the side wall of the adjoining property.

THE COURT: Do you have a copy of the petition? I can't load it.

- - -
(Handing to the Court.)
- - -

MR. PHILBIN: As I said, it's using the side wall of the adjoining property. And again, there is no permit to have this bracing.

Page 6

Additionally, in August of 2017, the owner was informed and cited for violations of the zoning code. This zone is a four-unit property. However --

THE COURT: In 2017?

MR. PHILBIN: Yes.

However, he has been using it as a five-unit property. On December 27, 2018, the Philadelphia Police Department were responding to a call within the area and informed licenses and inspections of this bulging wall.

The L&I went out to the scene, deemed the property imminently dangerous, issued notification.

THE COURT: When was that?

MR. PHILBIN: December 27, 2018.

THE COURT: Okay.

MR. PHILBIN: Deemed the property imminently dangerous due to the wall, and notified the owner via a notification violation and via text message, which, under the code, would qualify as valid notification.

Now, he has five days to appeal this violation. He has not filed any appeal, nor has there been any engineering reports, no

Page 7

contractors and no permits applied for.

Additionally, the property was posted, on December 27, 2018, informing everybody that it was imminently dangerous.

Upon the most recent inspection yesterday, Inspector Rybakowski, standing beside me here, will also testify that he believes there was someone still inside that property. And that just increases the danger both to the public and to that occupant.

So at the end of this, we will seek an order to demolish the property.

THE COURT: You handed me your petition, but I don't have a proposed order. What is your response?

MR. ITUAH: I want to confirm my response to the claim.

THE COURT: I don't have the response.

MR. ITUAH: Your Honor, I'm so amazed that even a city attorney would claim here that the property is supposed to be four units but is used as five units. That is not true. At the time I purchased my property in 2006 that property was as is. Up to today it's still four units and remains four units. All the

Page 8

downstairs has conformed to four units.

There has never been an issue that he is raising.

THE COURT: Let me ask you a question. They cited the property as being imminently dangerous.

Were you aware of that?

MR. ITUAH: They delivered a citation which they posted on the house to say that it's imminently dangerous. They called me up on the phone, while we are on holiday, on December 27. I was in Pittsburgh when they called me on the phone and say, police is here. I said, okay, what is the situation? They said licenses and inspections has come. They want to vacate the only tenant that was available that day. So they told me. I said, okay. You have to comply with the police. They all moved out.

So when I came back, I took various, seven days since they posted anything. I called the insurance company. They said they were going to come out and do the inspection. I called the contractors. I had three list of contractors that came out to try to provide estimates.

Page 9

[1]     The property is a mortgage company --
[2] I mean, it's financed.  And the mortgage
[3] company, JP Morgan, I contacted them and told
[4] them about it and those people said they would
[5] want to wait for the insurance to do their
[6] action before they can do anything about it.
[7]     As far as that imminently dangerous,
[8] or whatever word they use, which sounds very
[9] severe, which it's not so.  My property is as
[10] solid as anything.  It does not have interior
[11] foundation problem, only at the side because of
[12] the edge of the building; the bulge at one
[13] position, just one small spot.  And that's when
[14] I got someone, who is a contractor, to put
[15] something against, to prevent it from further
[16] shifting.
[17]     So fortunately police officer came
[18] around that neighborhood and saw that very
[19] brace and the brace that they had on the wall
[20] and that's when they called licenses and
[21] inspections.  And they simply put them in a
[22] dangerous step.
[23]     So first I knew, I think this is more
[24] pest than an issue than official writing.  The
[25] inspector of the office, the building inspector

Page 10

[1] in that building, at one time, actually
[2] humiliated me at the office when I went there
[3] to ask questions.  He simply called police to
[4] ask me to walk out.  And since then, there has
[5] never been on good terms and that is why I
[6] believe he took this action to say it was
[7] imminently dangerous, because he knows that's
[8] the only way to prove his case to, you know,
[9] push it to the curb.
[10]     That building is sound.  And none of
[11] the contractors who are so experienced who came
[12] to try to give me the estimate has said that
[13] that is a difficult job to do.  It's something
[14] they can resolve.
[15]     **THE COURT**:  Okay.  Go ahead.
[16]     **MR. PHILBIN**:  Your Honor, with your
[17] leave, I would like to rebut the defendant's
[18] statement by providing the testimony of
[19] Inspector Rybakowski regarding the condition of
[20] the property.
[21]     **THE COURT**:  Okay.
[22]     -- DIRECT EXAMINATION --
[23] **BY MR. PHILBIN**:
[24] Q.  Inspector Rybakowski, state your name for the
[25] record.

Page 11

[1] **A.**  Thomas Rybakowski, City of Philadelphia
[2] Licenses and Inspections.
[3] **Q.**  What is your position at licenses and
[4] inspections?
[5] **A.**  Building inspector assigned to contractor
[6] services unit for emergency services for L&I.
[7] **Q.**  What are your duties in that role?
[8] **A.**  We inspect and declare properties unsafe and
[9] imminently dangerous, and inspect the associated
[10] issued permits for those properties.
[11] **Q.**  What makes a property imminently dangerous?
[12] **A.**  It's declared imminently dangerous for the
[13] possibility of a collapse being imminent, and the
[14] danger of the adjoining property or public at large.
[15] **Q.**  And in execution of your duties, did you have
[16] the opportunity to inspect the address 508 West
[17] Tabor Road?
[18] **A.**  Yes.
[19] **Q.**  When was the last time you were at the
[20] property?
[21] **A.**  The last time I was there was January 2, 2019.
[22] **Q.**  And did you conduct an inspection on
[23] January 2?
[24] **A.**  Yes.
[25] **Q.**  And as part of your inspection, did you take

Page 12

[1] photographs?
[2] **A.**  Yes.
[3] **Q.**  I'm going to show you what we will mark as
[4] City Exhibit 1.
[5]     - - -
[6]     (Designated exhibit is marked and
[7] shown to the witness.)
[8]     - - -
[9] **BY MR. PHILBIN**:
[10] **Q.**  Do you see these?
[11] **A.**  Yes, these are pictures I took of the property
[12] at 508 West Tabor Road, on January 2, 2019.
[13] **Q.**  And do they accurately reflect the condition
[14] of the property as you saw it on January 2, 2019?
[15] **A.**  Yes.
[16]     **MR. PHILBIN**:  Your Honor, I will pass
[17] a copy of City-1 up to the bar and to the
[18] defendant.
[19]     **THE COURT**:  Okay.  Thank you.
[20]     - - -
[21]     (Handing to the Court and defendant.)
[22]     - - -
[23]     **MR. PHILBIN**:  Your Honor, I just ask
[24] that Inspector Rybakowski walk us through the
[25] City Exhibit 1 and show us what we are looking

Page 13

at.

**THE COURT**: Okay.

**THE WITNESS**: The pictures of the property, it's a three-story masonry structure on the 500 block of West Tabor Road.

The first picture shows the entire frontage of the property. The next photograph shows the posting that was posted on the property to the front window of the structure. That posting is dated December 27, 2018. That posting was posted by the area inspector who responded to an emergency call for that property at 508 West Tabor Road. That area inspector's name is Inspector Joseph Carroll.

The third photograph shows the reason the property was deemed unsafe. There is bracing that has been installed to the side load-bearing wall to this property, and there are several photographs after that photograph showing the bracing and the bulge of the wall.

**BY MR. PHILBIN**:

Q. Inspector, have you had the opportunity to view a bracing that's been properly installed?

A. Yes. Typically when bracing is installed to a side of a load-bearing wall or any type of exterior

Page 14

wall, it is anchored into the sidewalk with either some sort of anchor point, typically rebar or some sort of bolting system or mechanical system.

Whoever installed this bracing, number one, it was never issued a permit to have inspections done. We don't know if it was designed by a design professional or if some contractor or individual property owner or whoever installed it. It was place-nailed (phonetic), which means that someone just took regular nails and shot it into the pavement of the adjoining property, which is 510 West Tabor Road, along a common alleyway that is shared between both properties. It also is -- the framing or the bracing that is attached to the wall, it's not attached. It's attached to the bracing structure points, and then it is just laid up against the bulged section of this wall. The only contact point that this bracing is making is to an approximate four-inch section of the bulged board itself.

Q. Inspector, pages five and six of City-1, does that indicate where the bracing is away from the wall?

A. Correct. The last photograph in the packet actually shows where the wall has actually pulled

Page 15

away from the window. It's approximately a four-inch gap.

I would like to point out that the interior framing of this wall, these joists are typically set into these widths of brick typically between three and four inches. In my opinion, it looks like this wall has stepped out between three and four inches, which leads us to conclude that these floor joists aren't even supported in the wall, which means this wall has lost all of its structural integrity.

Q. Inspector Rybakowski, I want to point you to page nine. It's a photograph looking up at the top of the bracing.

A. Yes.

Q. In the top middle of the photograph, it looks like that brick is a different color than the brick lower.

A. Yes.

Q. What does that indicate to you?

A. Also there was a section of the building that had been added to the portion of the wall at one point. That leads us to believe that an addition was added to the third-floor portion of the structure. That was never permitted. There is no

Page 16

issued permits for adding a third-floor addition to this property.

That also increased the weight load of the framing and the weight load on this exterior side load-bearing wall. That could possibly be adding more reasons to the reason this wall is buckling or bulging at this time.

Q. Inspector Rybakowski, did you have the opportunity to review the permit history of this property?

A. Yes.

Q. Were there any permits pulled to put the bracing in?

A. There has not been any issued permits for any work on this property. There has been a permit application that was turned in to the department, but there's never been anything issued.

Q. Based on your experience in inspecting imminently dangerous properties, what is the risk that you saw that's caused by these violations?

A. During the emergency call that was called in to the department on the 25th of December, there were approximately 10 occupants to the property. There were five units to the property. The area inspector gained access to all the units. All the

Page 17

[1] occupants were removed from the property.
[2] When I was there on January 2nd, I did
[3] hear a voice via cough on the rear of the property
[4] on the first floor. I knocked on the side door.
[5] There was no answer. It leads me to believe there
[6] are still occupants to the inside of the property.
[7] The property was deemed imminently
[8] dangerous. It has the potential of a very serious
[9] collapse happening at the location. And for the
[10] danger of the public, the danger of the occupants
[11] inside the property, the danger to the adjoining
[12] properties, the department is suggesting or desiring
[13] abatement by demolition.
[14] **Q.** Inspector, has the defendant provided the
[15] department with any engineering reports?
[16] **A.** None whatsoever.
[17] **Q.** Finally, Inspector, you reviewed the case
[18] history of this property.
[19] Was there a violation issued in August
[20] of 2017?
[21] **A.** There were violations issued in 2016 and 2017
[22] for an illegal boarding house. That case was
[23] closed. Specifically, we could not gain access to
[24] the property to investigate that the occupancy had
[25] changed. That case was closed in 2017, in the

Page 18

[1] summer of 2017, for not being able to gain access to
[2] the property.
[3] But through our investigation and
[4] being called out to the property on December 27, it
[5] was found to have five units in the property and
[6] several of those units were occupied. It was a
[7] total of 10 occupants removed from the property.
[8] **MR. PHILBIN**: At this time, I don't
[9] have any more questions for Inspector
[10] Rybakowski.
[11] **THE COURT**: Do you have any questions?
[12] **MR. ITUAH**: May I ask questions?
[13] -- CROSS-EXAMINATION --
[14] BY MR. ITUAH:
[15] **Q.** Do you have any engineering certification to
[16] form those, to form the opinion that this is
[17] imminently dangerous or something like that? Do you
[18] have any engineering certification to say, yes, the
[19] structure of the building is imminently dangerous?
[20] **A.** Engineering, no. But I have declared
[21] properties imminently dangerous and unsafe several
[22] times.
[23] **Q.** Was there any of that portion you observed of
[24] the brace other than that particular portion that
[25] was four inch where the brace, was there any?

Page 19

[1] **MR. PHILBIN**: Your Honor, I object to
[2] this line of questioning. The Philadelphia
[3] Code provides an administrative remedy to the
[4] defendant to appeal these violations to the
[5] Board of Licenses and Inspections Review, and
[6] he has not done so.
[7] **THE COURT**: The Court knows that but
[8] the Court overrules.
[9] **THE WITNESS**: I didn't understand the
[10] question.
[11] BY MR. ITUAH:
[12] **Q.** Was there any other portion in the building
[13] where you observed that brace?
[14] **A.** Not that I'm aware.
[15] **Q.** Did you specifically see the place you say was
[16] occupied in the building?
[17] **A.** I'm sorry?
[18] **Q.** Did you see somebody? You said you tap and
[19] you have a conclusion that somebody was living
[20] there.
[21] Did you physically see anybody there?
[22] **A.** On January 2, when I accessed the side yard, I
[23] went to the back of the property to get pictures and
[24] I heard somebody to the left, which is the rear of
[25] the property. I heard a cough. I yelled out to see

Page 20

[1] if anybody answered. Nobody answered. But it came
[2] from the left, which is the rear of 508 West Tabor
[3] Road. I knocked on the side door and there was no
[4] answer. But there was definitely a sound. And last
[5] time I knew, dogs and cats don't make the sound of a
[6] cough.
[7] **Q.** Do you see the fifth unit, as you claim in
[8] that building?
[9] **A.** I cannot.
[10] **Q.** Did you check the city records to verify what
[11] permits there were for that building since 2006 when
[12] I bought the property?
[13] **A.** The property is zoned for four units, and it
[14] continues to still be zoned for four units.
[15] **Q.** The violation, you said it was closed.
[16] Was it just closed at department
[17] discretion all because of the violation noted at
[18] that time was not correct?
[19] **A.** It was not correct. The violation was closed.
[20] It was closed for lack of being able to gain access
[21] to the property.
[22] **MR. ITUAH**: No further questions.
[23] **THE COURT**: Any further redirect based
[24] on that?
[25] **MR. PHILBIN**: No, Your Honor.

Page 21

[1] THE COURT: Any more evidence to
[2] present?
[3] MR. PHILBIN: No, just argument.
[4] THE COURT: With that, you rest?
[5] MR. PHILBIN: Yes.
[6] THE COURT: Go ahead, sir. What did
[7] you have to present to rebut? Just show it to
[8] the Court.
[9] MR. ITUAH: Your Honor, I can see the
[10] bossy nature of the counsel. They had a copy
[11] to present that I should have been able to take
[12] a clear look at it and see if it is my building
[13] or not.
[14] But I do know that the portion that
[15] was braced, it shows like it's just like the
[16] one attached to my response to the petition
[17] filed. There has never been a time that I have
[18] done anything of remodeling or any touch of the
[19] building look. It is the way I bought it, that
[20] is the way it has been. I have never done
[21] anything on my own in that building since I
[22] bought it.
[23] So I have, I know, when counsel
[24] mentioned that there was only five days that
[25] was given, it was 10 days I was told that that

Page 22

[1] place have to vacate. And then I went into
[2] full contact, to make sure that the bank that
[3] have interest in the property, that have
[4] interest in the property are fully aware of the
[5] situation.
[6] MR. PHILBIN: I object.
[7] THE COURT: Overruled.
[8] MR. ITUAH: -- the insurance company
[9] and they also said they were going to do the
[10] violation.
[11] THE COURT: Sir, the bottom line is
[12] you're in court today because the City deemed
[13] your property imminently dangerous. Okay?
[14] You're saying no, it's not dangerous.
[15] MR. ITUAH: It's not dangerous because
[16] the --
[17] THE COURT: I need you to hear me.
[18] You're saying it's not dangerous. They are
[19] saying that it is. They provided me testimony
[20] showing why it's dangerous and how it's
[21] dangerous. The Court has looked at the
[22] property and sees that the property certainly
[23] looks dangerous, especially with an apparatus
[24] holding up what looks like the side of the
[25] building with a bulge, that looks like it's

Page 23

[1] separating itself.
[2] I don't have any other testimony,
[3] expert testimony, from you saying contrary to
[4] what the City is saying, that the property is
[5] not dangerous.
[6] Here is the deal. As a judge, I have
[7] to make sure the safety of the individuals in
[8] that area of the city are protected. If that
[9] property happens to fall down right now,
[10] somebody could be in danger and be hurt.
[11] That's why we have licenses and inspections go
[12] out and inspect the properties to see if that
[13] was the case.
[14] You know you were cited that the
[15] property was unsafe. You come here to court
[16] and there is no one, an expert or anyone, that
[17] could tell me this property is not unsafe.
[18] Only thing I have in the record for testimony
[19] and evidence is that the property looks to be
[20] unsafe.
[21] Do you have anything else to say?
[22] And moreover, when they cited you, you
[23] didn't appeal anything. You didn't appeal the,
[24] I think it was the citation that came from
[25] December 27.

Page 24

[1] Is that correct?
[2] MR. PHILBIN: Yes, Your Honor.
[3] MR. ITUAH: The citation just arrived
[4] on December 27. I never got citation. It was
[5] on the wall. I wasn't actually given it.
[6] THE COURT: December 27, 28, 29, 30.
[7] You didn't appeal it.
[8] MR. ITUAH: This was holiday period,
[9] Your Honor. There is no way --
[10] THE COURT: The city is not closed the
[11] entire holiday time. The city is only closed
[12] Christmas day and New Year's Day.
[13] MR. ITUAH: Even if I appealed the
[14] order, I should have 10 days --
[15] THE COURT: That is beside the point.
[16] The point is you can't have an unsafe property
[17] in the city and people living there. They have
[18] a job to make sure properties in the city are
[19] safe so that other people that are living there
[20] and/or people that are walking around, happen
[21] to walk on the sidewalk, this building is not
[22] falling down, hurting people. That's the
[23] point.
[24] And you were aware there were problems
[25] with this property. You can't say that you

Page 25

[1] bought the property like that. You have an
[2] obligation to fix it if it was purchased like
[3] that. And up to this point, it hasn't been
[4] done.
[5]   **MR. ITUAH**: I have contact with a
[6] contractor.
[7]   **THE COURT**: I understand you contacted
[8] people. But that doesn't translate into the
[9] work being done. I understand you contacted
[10] people. I'm not saying you did not.
[11]   But I'm saying, for today, in a court
[12] of law, I have to have some evidence to show
[13] contrary to what the City is representing to
[14] the Court that this property is imminently
[15] dangerous. You have not given me that
[16] information. I don't have that.
[17]   **MR. ITUAH**: Your Honor, I just
[18] mentioned that brace was done by a contractor.
[19] He was coming back to do the job, as I
[20] mentioned.
[21]   **THE COURT**: But you don't have a
[22] contractor here stating otherwise the property
[23] is safe because of X, Y, and Z. I don't have
[24] any of that. In a court of law, I need
[25] evidence, which you have not provided.

Page 26

[1] So because of that, I'm going to have
[2] to grant the City's request for the injunction.
[3] It's granted.
[4]   **MR. PHILBIN**: Thank you, Your Honor.
[5]       - - -
[6]     (Matter is concluded.)
[7]       - - -

Page 27

[1]   C E R T I F I C A T E   O F   O F F I C E R.
[2]   I, Virginia Leyendecker, a Certified
[3] Shorthand Reporter and Notary Public, do hereby
[4] certify that the foregoing is a true and accurate
[5] transcript of the proceedings as taken
[6] stenographically by and before me at the date, time
[7] and location aforementioned.
[8]   I do further certify that I am neither
[9] a relative nor employee, nor attorney or counsel to
[10] any parties involved; that I am neither related to
[11] nor employed by any such attorney or counsel, and
[12] that I am not financially interested in the action.
[13]     /s/Virginia Leyendecker, CSR RPR

Court Reporting System (Generated 2023/05/04 08:22:51)

Lawyer's Notes
_____

