# EXHIBIT "15"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABRAHAM ITUAH,<br>    Plaintiff,<br><br>  v.<br><br>CITY OF PHILADELPHIA, et al.,<br>    Defendants. | Civil Action<br>No. 19-5088 |

## DECLARATION OF PAMELA ELCHERT THURMOND

I, Pamela Elchert Thurmond, make this Declaration and state as follows:

1. I am of legal age and competent to provide this Declaration. All the information herein is based on my own personal knowledge.

2. I am currently employed by the City as a Senior Attorney in the City's Law Department where I represent the City primarily in bankruptcy court.

3. In my role, I supervise the preparation and filing of proofs of claim on behalf of the City where the City is a creditor in bankruptcy cases, represent the City's interests in related bankruptcy proceedings, and negotiate with the debtor and other creditors.

4. On March 16, 2018, Abraham Ituah, the Plaintiff in this case, filed a bankruptcy case in the Southern District of New York. A copy of the docket for this case is attached to this declaration as Exhibit 16.

5. Because Mr. Ituah had outstanding debts to the City, the City was notified as a creditor and I was assigned the case.

6. Because the case was filed in New York and my office in Philadelphia, I asked Mr. Ituah if he would consent to me appearing telephonically at the hearings, but he did not

agree. Pursuant to the Local Rules, I could not appear telephonically without the permission of all parties to the matter.

7. I filed proofs of claim on behalf of the City as well as an objection to the confirmation of the plan on July 25, 2018 based in part on its failure to provide for full payment on the City's claims and on plan feasibility grounds.

8. Thereafter I traveled to New York once for a hearing on October 30, 2018.

9. The case was subsequently dismissed on December 10, 2018 based on Mr. Ituah's motion prior to the next hearing set for December 11, 2018.

10. While the case was pending, I also became aware that the Philadelphia Sheriff's Office was holding excess proceeds owed to Mr. Ituah resulting from the sheriff's sale of his former property at 3843 Fairmount Avenue.

11. As I understand it, when a property in Philadelphia is sold at a sheriff's sale for an amount greater than the debt being collected, the difference is distributed to other creditors after the payment of costs and then to the property owner if any remains.

12. The Sheriff's Office determines which payments to make by ordering a title insurance policy for the property from a title insurance company that lists the distributees and the amounts owed, called a Title Distribution Policy.

13. According to the Title Distribution Policy for 3843 Fairmount Avenue, Mr. Ituah was owed $11,112.54 in excess proceeds after creditors were paid.

14. Because Mr. Ituah had filed for bankruptcy, the funds were part of the bankruptcy estate, so I transmitted the funds to the trustee.

15. On August 8, 2018, I sent a letter to the trustee with the Sheriff's check for the excess proceeds and a copy of the Title Distribution Report, and sent a copy of the package to

Mr. Ituah as well. A copy of the letter with the Title Distribution Report and check is attached to this declaration as Exhibit 17.

16. I had no role or involvement in the determination of the amount of excess proceeds owed to Mr. Ituah.

17. I was not and am not aware of any court order contrary to the Sheriff's actions or the transmittal of the funds to the trustee.

18. Mr. Ituah filed another bankruptcy case on January 6, 2020, this time in the Eastern District of Pennsylvania. A copy of the docket for this case is attached to this declaration as Exhibit 18.

19. Because Mr. Ituah still had outstanding debts to the City, the City was notified as a creditor and I was assigned the case.

20. On behalf of the City, I filed proof of claims on January 15 and 22, 2020 for debts owed for water debts. Copies of these documents are attached hereto as **Exhibits 19 and 20, respectively**.

21. Staff in the unit also prepared a proof of claim for the tax debts owed to the City on behalf of another bankruptcy attorney in my unit, Megan Harper, that was filed on January 29, 2020. A copy of this document is attached hereto as **Exhibits 21**.

22. The Tax Proof of Claim filed indicated that the claims were secured by Mr. Ituah's real estate and attached as an exhibit a list of real estate owned by Mr. Ituah along with valuations of each property.

23. The exhibit lists a property at 33 S 53rd Street with a valuation of $210,355.00.

24. I did not prepare this exhibit or file this exhibit, although I have no reason to doubt its accuracy.

25. On March 5, 2020, the trustee moved to dismiss the bankruptcy based on the debtor's failure to obtain insurance for his properties, but the motion was later withdrawn.

26. I also filed an objection to the confirmation of the plan on July 7, 2020 based in part on its failure to provide for full payment on the City's claims. A copy of this document is attached hereto as **Exhibit 22**.

27. As part of the objection I filed, I referenced the Tax Proof of Claim and attached a copy as an exhibit.

28. On August 18, 2020, the bankruptcy trustee filed another motion to dismiss the bankruptcy, this time due to delay, and which was granted on September 23, 2020. A copy of the Motion is attached hereto as **Exhibit 23**.

29. I did not file any motion to dismiss the bankruptcy case.

30. I understand that Mr. Ituah is suing me in part because he alleges that I "engineered inaccurate bills collection" and because "payments received from escrow after settlements were not updated and the city continues to create bills and claims already paid."

31. At no point prior to, during, or after Mr. Ituah's bankruptcy case did I have any role in or involvement in the creation or calculation of bills to Mr. Ituah, nor do I have authority to issue water or tax bills to any taxpayer.

32. My understanding is that billing is handled by staff in the Revenue Department, which is entirely separate from the Law Department, where I work.

33. Similarly, I have no and had no role or involvement in how the City processes payments tendered outside of the bankruptcy process, and the City did not receive any payments as part of his bankruptcy cases, which were all dismissed.

34. I also have no and had no role or involvement in how the City collects outstanding debts outside of the bankruptcy process and have not have any involvement with any attempts to collect Mr. Ituah's debts outside of the bankruptcy cases.

35. Finally, I had no involvement whatsoever with the demolition of Mr. Ituah's property at 508 W. Tabor Rd.

36. I have not had any contact with the officials and employees in the Department of License and Inspection regarding any of Mr. Ituah's properties, and I did not encourage anyone to demolish any of Mr. Ituah's properties.

37. I was unaware that Mr. Ituah's property had been demolished until it was brought to my attention as part of this lawsuit.

38. At no time have I taken, permitted others to take, or been aware of others taking, any action against Mr. Ituah because of his request that bankruptcy hearings be conducted in person or requested or suggested that any other individual do so.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

DATE: September 12, 2023        BY: _____
                                    PAMELA ELCHERT THURMOND