IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABRAHAM ITUAH,** : | |
| **Plaintiff,** : | |
| : | Civil Action |
| v. : | No. 19-5088 |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| **Defendants.** : | |

**DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Pamela Thurmond, Brendan J. Philbin and Joseph Carrol, by and through the undersigned counsel, respectfully submit this Statement of Material Facts in support of their Motion for Summary Judgment.

**I.     The Sheriff's Sale of the Fairmount Property**

1. On April 22, 2015, the City, through its attorney James Zwolak, filed a petition to initiate a sheriff's sale of the property at 3843 Fairmount Avenue (the "Fairmount Property") to satisfy delinquent real estate taxes. (*See* Ex. 2 at 2 (docket for *City of Philadelphia v. Ituah (Ituah I)*, No. 1504T0504 (Pa. Ct. Com. Pl. Phila.)).

2. The Fairmount Property was owned by Plaintiff Abraham Ituah. (Compl. at 4, ECF No. 1).

3. On August 10, 2015, the court entered a Decree to sell the Fairmount Property at a sheriff's sale. (*See* Ex. 2 at 3).

4. On September 16, 2015 the property was sold to Dimitrios Dimopoulos. (*See id.*)

5. On that same day, Ituah filed a Motion to Set Aside the Tax Sale, arguing that he did not receive proper notice of the sale. (*See id.* at 3-4).

6.	The City, through its attorney Cynthia Stavrakis, filed an Answer to the Motion on October 13, 2015, and Ituah filed a Reply on October 22, 2015. (*See id.* at 4).

7.	On October 26, 2015, Judge Carpenter denied Ituah's Motion to Set Aside the Tax Sale. (*Id.*)

8.	Ituah filed a Motion for Reconsideration on November 17, 2015, which Judge Carpenter denied on November 18, 2015. (*Id.* at 5).

9.	Ituah then filed a Motion to Redeem the Premises on December 2, 2015 and City attorney Stavrakis filed an Answer on December 22, 2015. (*Id.* at 5-6).

10.	Judge Carpenter held a hearing on the Motion to Redeem on March 23, 2016. (*Id.* at 6).

11.	On March 28, 2016, Judge Carpenter entered an Order denying Ituah's Motion to Redeem. (*Id.*).

12.	Ituah appealed Judge Carpenter's decision to the Pennsylvania Superior Court, which dismissed the appeal on June 24, 2016. (*See id.* at 9).

13.	 Ituah then filed an Application for Leave to File a Petition for Allowance of Appeal *Nunc Pro Tunc* with the Pennsylvania Supreme Court, which that court denied on December 28, 2016. (*See id.*).

**II.	Ituah's Bankruptcies**

**A.	New York Bankruptcy**

14.	On March 16, 2018, Plaintiff Abraham Ituah for Chapter 13 bankruptcy as an individual in the Southern District of New York (the "New York Bankruptcy"). (*See* Ex. 15 ¶ 4 (declaration of Pamela Elchert Thurmond ("Thurmond Decl.")); Ex. 15 at 2 (docket for *In re Ituah* (In re Ituah I), No. 18-35408-cgm (Bankr. S.D.N.Y.)).

15. City bankruptcy attorney Pamela Elchert Thurmond primarily represented the City in the New York Bankruptcy. (*See* Ex. 15 ¶ 5).

16. Ituah declined Thurmond's request to consent to her appearing telephonically at hearings. (*See id.* at 6).

17. Thurmond attended one hearing in the New York Bankruptcy in person on October 20, 2018. (*See id.* ¶ 8).

18. The New York Bankruptcy was subsequently dismissed on December 10, 2018 based on Ituah's motion. (*See id.* ¶ 9).

19. While the case was pending, Thurmond also became aware that the Philadelphia Sheriff's Office was holding excess proceeds owed to Ituah resulting from the sheriff's sale of the Fairmount Property. (*See id.* ¶ 10).

20. When a property in Philadelphia is sold at a sheriff's sale for an amount greater than the debt being collected, the difference is distributed to other creditors after the payment of costs and then to the property owner if any remains. (*See id.* ¶ 11).

21. The Sheriff's Office determines which payments to make by ordering a title insurance policy for the property from a title insurance company that lists the distributees and the amounts owed, called a Title Distribution Policy. (*See id.* ¶ 12).

22. According to the Title Distribution Policy for the Fairmount Property, Ituah was owed $11,112.54 in excess proceeds after creditors were paid. (*See id.* ¶ 13).

23. Because Mr. Ituah had filed for bankruptcy, the funds were part of the bankruptcy estate, so Thurmond transmitted the funds to the trustee. (*See id.* ¶ 14).

24. On August 8, 2018, Thurmond sent a letter to the trustee with the Sheriff's check for the excess proceeds and a copy of the Title Distribution Report. (*See id.* ¶ 14; Ex. 17 (cover letter, title distribution report, and check)).

25. Thurmond had no role or involvement in the determination of the amount of excess proceeds owed to Mr. Ituah, (*See* Thurmond Decl. ¶ 16).

26. No court order prohibited the Sheriff's actions or the transmittal of the funds to the trustee, and Thurmond is not aware of any. (*See id.* ¶ 17; *see also* Ex. 2 (*Ituah I* docket)).

**B.     Pennsylvania Bankruptcy**

27. Ituah filed another bankruptcy case on January 6, 2020 in the Eastern District of Pennsylvania (the "Pennsylvania Bankruptcy"). (*See* Ex. 15 ¶ 18 (Thurmond Decl); Ex. 18 (docket for *In re Ituah* (In re Ituah II), No. 20-10058-amc (Bankr. E.D. Pa.))).

28. Because Ituah still had outstanding debts to the City, the City was notified as a creditor and Thurmond was assigned the case. (*See id.* ¶ 19).

29. On behalf of the City, Thurmond filed proof of claims on January 15 and 22, 2020 for debts owed for water debts. (*See id.* ¶ 20; Exs. 19, 20).

30. City Staff also prepared a proof of claim for the tax debts owed to the City (the "Tax Proof of Claim") on behalf of another City bankruptcy attorney, Megan Harper, that was filed on January 29, 2020. (*See* Ex. 15 ¶ 21 (Thurmond Decl.); Ex. 21).

31. The Tax Proof of Claim indicated that the claims were secured by Ituah's real estate and attached as an exhibit a list of real estate owned by Ituah along with valuations of each property. (*See* Ex. 21 at 2).

32. The exhibit lists a property at 33 S 53rd Street with a valuation of $210,355.00. (*See* Ex. 21 at 7).

33. Thurmond did not prepare this exhibit or file this exhibit and is unaware of any inaccuracy within it. (*See* Ex. 15 ¶ 24 (Thurmond Decl.)).

34. On March 5, 2020, the trustee moved to dismiss the bankruptcy based on the debtor's failure to obtain insurance for his properties, but the motion was later withdrawn. (*See id.* ¶ 25).

35. On March 29, 2018, Ituah filed his proposed bankruptcy Plan, (*see* Ex. 18 at 2 (docket)), and Thurmond filed an objection to the confirmation of the plan on July 7, 2020 based in part on its failure to provide for full payment on the City's claims,. (*see id.* at 2; Ex. 15 ¶ 26; Ex. 22)).

36. As part of the objection Thurmond filed, she referenced the Tax Proof of Claim and attached a copy as an exhibit, but the objection itself did not refer to the valuation of the Tabor Property. (*See* Ex. 22).

37. On August 18, 2020, the bankruptcy trustee filed another motion to dismiss the bankruptcy, this time due to delay, and which was granted on September 23, 2020. (*See* Ex. 15 ¶ 28 (Thurmond Decl.)).

38. Thurmond did not file any motion to dismiss the bankruptcy case. (*See id.* ¶ 29; Ex. 16 (*In re. Ituah II* docket).

**III.**   **The Demolition of 508 W. Tabor Road**

39. On December 27, 2018 City of Philadelphia Department of Licenses and Inspection ("L&I") Inspector Joseph Carroll issued a Notice of Violation for Ituah's property at 508 W. Tabor Road (The Tabor Property") after inspecting in response to a report from the Police department about a bulging wall. (*See* Ex. 4 at 17 (Notice of Violation attached as Exhibit A to the City's motion to demolish); Ex. 6 at 6 (hearing transcript)).

40. The Notice stated that L&I had determined the structure was "imminently dangerous" because the side bearing wall was not capable of supporting the load. (*See id.* at 17-18).

41. On January 2, 2019, the City, by its attorney Brendan Philbin, filed a Petition for a Temporary Restraining Order and Preliminary Injunction in Philadelphia Court of Common Pleas to allow the City to demolish the Tabor Property. (*See id.* at 10-11 ¶ 3 (City motion); Ex. 3 (docket for *City of Philadelphia v. Ituah* (Ituah II), No. 1504T0504 (Pa. Ct. Com. Pl. Phila.)).

42. The following day, Ituah filed a response in opposition. (*See* Ex. 5).

43. At the hearing on the City's motion to demolish the structure another City building inspector, Thomas Rybakowski, testified that he had also inspected the structure the day before and seen the bulging side wall. (*See* Ex. 6 at 11:15-13:20 (Jan. 3, 2019 Trnscript).

44. Rybakowski described how the wall had separated from the window by several inches, indicating that the "wall ha[d] lost all of its structural integrity." (*Id.* at 14:21-15:11).

45. Rybakowski also described how the bracing of the wall was not permitted and improperly performed because it was simply nailed into the sidewalk rather than anchored into an anchor point on the ground such as rebar, and only supported the wall in one small section. (*See id.* at 13:24-14:20).

46. Rybakowski further described his observations that the third floor of the structure had been illegally added without a permit, thereby increasing the weight load on the failing wall. (*See id.* at 15:12-16:7).

47. Rybakowski's overall conclusion was that these conditions presented "the potential of a very serious collapse" that would pose a danger to the public, remaining occupants of the property, and the adjoining properties. (*See id.* at 16:18-17-13).

48. Inspector Rybakowski also introduced photos showing the conditions he described. (*See id.* at 12; Ex. 7).

49. Although Ituah testified that the Tabor Property could be repaired, he did not present any evidence or expert testimony, or provide any similar documents to the City. (*See* Ex. 6 at 17:14-16, 21-25 (hearing transcript)).

50. Based on this record, the Court of Common Pleas agreed that the structure was imminently dangerous and that demolition was appropriate. (*See id.* at 25:7-26).

51. After a hearing, the court entered an order authorizing the City to demolish the property and for the Police Department to remove any occupants. (*See* Ex. 8 at 2-3 ¶¶ 2, 4 (TRO)).

52. Plaintiff appealed the order to the Commonwealth Court the following day but did not seek a stay. (Ex. 9).

53. The City demolished the property on January 11, 2019. (*See* Ex. 13 ¶ 2).

54. Plaintiff subsequently failed to file a required Pa. R. Civ. P 1925(b) Statement of Issues on Appeal. (Ex. 10).

55. The Commonwealth Court quashed Plaintiff's appeal on May 10, 2019. (Ex. 11 (Commonwealth Court docket)).

56. On July 8, 2019, Plaintiff filed a Petition for Leave to File a Petition for Allowance of Appeal *Nunc Pro Tunc* with the Pennsylvania Supreme Court, which that court denied on October 1, 2019. (Ex. 12 (Pennsylvania Supreme Court docket)).

IV. **Thurmond's Role**

57. Thurmond had no involvement whatsoever with the demolition of Mr. Ituah's property at 508 W. Tabor Rd. (*See* Ex. 15 ¶ 35 (Thurmond Decl.)).

58. Thurmond had no contact with the officials and employees in the Department of License and Inspection regarding any of Ituah's properties, and did not encourage anyone to demolish any of Ituah's properties. (*See id.* ¶ 36).

59. Thurmond was unaware of the demolition proceedings regarding the Tabor Property until after this lawsuit was filed. (*See id.* ¶ 37).

60. At the hearing on the City's motion to demolish, Ituah admitted that L&I came the property because police officers had seen the bracing Ituah had had improperly installed on the side of the structure in response to the bulging wall. (*See* Ex. 7 at 9:9-22).

61. At no point prior to, during, or after Ituah's bankruptcy cases did Thurmond have any role in or involvement in the creation or calculation of bills to Ituah, nor does Thurmond have authority to issue water or tax bills to any taxpayer. (*See id.* ¶ 31).

62. Billing is handled by staff in the Revenue Department, not the Law Department. (*See id.* ¶ 32).

63. Thurmond also had and has no role or involvement in how the City processes payments tendered outside of the bankruptcy process, and the City did not receive any payments as part of Ituah's bankruptcy cases, which were all dismissed. (*See id.* ¶ 33).

64. Thurmond also had and has no role or involvement in how the City collects outstanding debts outside of the bankruptcy process and has not had any involvement with any attempts to collect Ituah's debts outside of the bankruptcy cases. (*See id.* ¶ 34).

65. At no time has Thurmond taken, permitted others to take, or been aware of others taking, any action against Ituah because of his request that Thurmond attend bankruptcy hearings in person or requested or suggested that any other individual do so. (*See id.* ¶ 38).

Date: September 12, 2023					Respectfully submitted,

						*/s/ Michael Pfautz*
						Michael Pfautz
						Deputy City Solicitor
						Pa. Attorney ID No. 325323
						City of Philadelphia Law Department
						1515 Arch Street, 15th Floor
						Philadelphia, PA 19102
						(215) 683-5233
						michael.pfautz@phila.gov