IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABRAHAM ITUAH,<br>                Plaintiff,<br><br>      v.<br><br>CITY OF PHILADELPHIA, et al.,<br>                Defendants. | Civil Action<br>No. 19-5088 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In response to Defendants' Motion for Summary Judgment, Ituah effectively concedes that his remaining claims are legally barred. Ituah admits that his Tabor Property was damaged and that Philbin and Carrol had judicial authorization for the demolition, rendering his claim outside the Takings Clause and entitling them qualified immunity. And Ituah admits his claims against Thurmond are based either on a legally incorrect theory of vicious liability or her conduct in bankruptcy court for which she has absolute immunity. Because Ituah does not dispute any material facts or cite evidence in support, and because as a result Defendants are entitled to judgment as a matter of law, the Court should grant Defendants' motion.

**I.   TAKINGS**

Defendants Philbin and Carroll sought summary judgment on Ituah's Takings claim on several bases, including that the Takings clause was inapplicable where the City exercised its police powers and that they were entitled to qualified immunity because their actions in reliance on judicial authorization were reasonable. Although Ituah claims to dispute these legal questions,

he does not actually dispute the facts relevant to these determinations and he is wrong as a matter of law. As a result, Philbin and Carrol are entitled to summary judgment.[1]

"[W]here, as here, an unsafe structure is demolished based on the separate and legitimate purpose of promoting public safety, compensation under the Takings Clause is not available." *In re 106 North Walnut, LLC*, 447 Fed. App'x 305, 309 (3d Cir. 2011). The City demolished Ituah's Tabor Property after an administrative determination that it was imminently dangerous and after securing judicial authorization to demolish it on that basis. (Pl.'s Resp. to Defs.' Mot. for Summary Judgment ("Pl.'s Resp.") at 6-7 ¶¶ 39, 50-52, ECF 42). Ituah argues that the City did not act pursuant to its police powers because the Tabor Property was not imminently dangerous, pointing to the fact that the structure did not collapse on its own in the two weeks between the Notice of Violation and the Demolition and his claims that the damage was "repairable." (*Id.* at 6-7 ¶¶ 44, 49). But Ituah does not actually dispute that the structure could not safely remain in its current condition, and so his assertions do not change the fact that the City, through Philbin and Carroll, acted to protect public safety from this threat as opposed to through eminent domain. As a result, Ituah's Takings claim is barred as a matter of law. *See Zitter v. Petruccelli*, 744 Fed. App'x 90, 96 (3d Cir. 2018) (unpublished) (holding governmental destruction of property does not raise "a viable Takings claim" where it is performed pursuant to "'the exercise of governmental authority other than the power of eminent domain'" (quoting *Bennis v. Michigan*, 516 U.S. 442, 452 (1996))).

Ituah also questions the application of qualified immunity, but again admits the key fact supporting it. Ituah complains that the City demolished the Tabor Property while his appeal was pending and that he did not receive sufficient notice or time to complete repairs. (Pl.'s Resp. at

---

[1] As discussed in Defendants' Motion, Philbin is also entitled to absolute immunity.

11-12, 16-17). But Ituah does not dispute that he did not seek a stay of the trial court's order, (*id.* at 7 ¶ 52), apparently in the erroneous belief that merely filing an appeal would have the same effect. As to timing, Ituah wrongly claims that the relevant Philadelphia Code provision requires a specific amount of time for repairs[2] that was not provided here, but Ituah also says that Carroll gave him 10 days to complete repairs and acknowledges the demolition only took place after 15 days. (*Id.* at 11, 14). And in any event, notice is an element of a procedural due process, not a Takings claim. Further, Ituah has still failed to identify any case clearly establishing that demolishing a damaged but fixable building with judicial approval constitutes a Taking rather than a permissible exercise of the police power. Because Ituah does not dispute that Philbin and Carroll acted pursuant to judicial authorization and that he did not obtain a stay of that authorization, and has not identified any clearly established precedent that they violated, they are entitled to qualified immunity from his Takings Claim as well. *See, e.g.*, *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (holding, in search warrant context, that acting pursuant to judicial authorization "is the clearest indication that the officers acted in an objectively reasonable manner'").

## II.  RETALIATION

As to his retaliation cause of action against Thurmond, Ituah's response confirms that his claim fails as a matter of law. Thurmond sought summary judgment on the basis that there was no dispute of material fact that she did not personally take any action against Ituah with respect

---

[2] The relevant Philadelphia Code provision provides that "If an imminently dangerous condition is found, the code official shall serve on the owner, managing agent or person in control of the structure a written notice describing the imminent danger and specifying the required repair to render the structure safe, <u>or</u> requiring the imminently dangerous structure or portion thereof to be demolished <u>within a stipulated time</u>." Phila. Code. PM-1110.2 (emphasis added). While Ituah focuses on the latter portion, the first clause permits the City to require repair—as it did here—without any time frame. (*See* ECF No. 41-4 at 18-19 (Notice of Violation)).

to bills, collections, or the Tabor Property demolition, and that her only personal involvement was in litigating Ituah's bankruptcy claims for which, among other things, she had absolute immunity. Because Ituah does not factually dispute these bases, she is entitled to judgment as a matter of law.

First, Ituah admits that what he primarily seeks is to impose "vicarious liability" on Thurmond. (Pl.'s Resp. at 42 at 15). He concedes that he "ha[s] no knowledge of Thurmond['s] function in her office," but merely that he claims that she *should* have known what actions others in the City were allegedly taking against him because she is a "senior legal officer." (*Id.* at 7-8 ¶¶ 50, 61). Nor does Ituah cite any admissible evidence of Thurmond's personal involvement; as explained in Defendants' motion, Ituah's inference of involvement based on the timing of the bankruptcy dismissal and the demolition proceedings rests on a misconception that the bankruptcy stay would have applied to the demolition action (it would not). *See* 11 U.S.C. § 362(b)(4) (excepting governmental litigation to exercise police powers from automatic bankruptcy stay). It is black letter law that a "defendant in a civil rights action must have personal involvement in the alleged wrongs" of the case in order to be liable, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988), so any claim for vicarious liability for action outside of bankruptcy litigation is barred.

As to the litigations, Ituah claims Thurmond moved to dismiss his most recent Pennsylvania bankruptcy, assisted Ituah's own lawyer in having the bankruptcy dismissed, and testified at a hearing on attorney's fees for Ituah's counsel. (Pl.'s Resp. at 5-6 ¶¶ 37-38, 12-13, 16-17). But as the record shows, it was the bankruptcy trustee's motion to dismiss that was granted. (ECF No. 41-18 at 10 entry 76 (docket)). And Thurmond has absolute immunity for her

conduct litigating on behalf of the government.[3] *See, e.g.*, *Spuck v. Pa. Bd. of Probation & Parole*, 563 Fed. App'x 156, 158 (3d Cir. 2014) (unpublished); *Bryen v. Becker*, 785 F. Supp. 484, 487 (D.N.J. 1991) ("If every government attorney involved in a civil matter were to be subject to suit, and his actions were scrutinized for any possible constitutional error, then the efficacy of these officials would surely be compromised."). Similarly, Thurmond's conduct as a witness is also protected by absolute immunity. *See, e.g., Saunders v. BB&T Bank*, 852 Fed. App'x 651, 654–55 (3d Cir. 2021) (dismissing 1983 claim because defendant is "protected by absolute immunity for testifying as a witness in a judicial proceeding." (citing *Rehberg v. Paulk*, 566 U.S. 356, 367)). As a result, Ituah's retaliation claims must be dismissed.

## III.   CONCLUSION

Because the undisputed record shows that Ituah's structure was a safety hazard and that Carroll and Philbin acted reasonably based on a court order, they are entitled to summary judgment on Ituah's Takings claim. Because the undisputed record also shows that Thurmond had no personal involvement with Ituah outside of bankruptcy litigation, for which she has absolute immunity, she is entitled to summary judgment on Ituah's retaliation claim. For the foregoing reasons and those set forth in Defendants' motion, Defendants respectfully request that the Court enter summary judgment in their favor on all of Plaintiff's claims.

---

[3] In contesting absolute immunity, Ituah complains that the City did not properly respond to his discovery requests, but attached only his requests without the City's responses. (*See* Pl.'s Resp. at 9-10, 15, 26-32). Defendants responses were not based on immunity, and this claim would have no bearing on the fatal legal flaws in his claims, but Defendants note that even if they had asserted immunity, Ituah's own requests (such as "why shouldn't [Plaintiff[ consider their actions as retaliations?") were not relevant to the immunity defense set forth in Defendants' Motion.

Date: October 10, 2023                                    Respectfully submitted,


                                                          */s/ Michael Pfautz*
                                                          Michael Pfautz
                                                          Deputy City Solicitor
                                                          Pa. Attorney ID No. 325323
                                                          City of Philadelphia Law Department
                                                          1515 Arch Street, 15th Floor
                                                          Philadelphia, PA 19102
                                                          215-683-5233
                                                          michael.pfautz@phila.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I filed Defendants' Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment via the Court's electronic filing system and is available for downloading. I also certify that a copy of the Reply has been served upon the Plaintiff by email and first class mail, postage prepaid, as follows:

    Abraham Ituah
    419 W. Godfrey Avenue
    Philadelphia, PA 19120
    aituah@aol.com
    ituahabraham@gmail.com
    *Plaintiff pro se*

Date: October 10, 2023                                    Respectfully submitted,

                                                                           */s/ Michael Pfautz*
                                                                           Michael Pfautz
                                                                           Deputy City Solicitor
                                                                           Pa. Attorney ID No. 325323
                                                                           City of Philadelphia Law Department
                                                                           1515 Arch Street, 15th Floor
                                                                           Philadelphia, PA 19102
                                                                           215-683-5233
                                                                           michael.pfautz@phila.gov