**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ABRAHAM ITUAH,

*Plaintiff,*

v.

CITY OF PHILADELPHIA, et al.,

*Defendants.*

CIVIL ACTION

NO. 19-5088

**Pappert, J.**                                    **November 6, 2023**

## MEMORANDUM

Abraham Ituah, acting *pro se*, sued the City of Philadelphia and individual City employees, alleging various constitutional violations arising from the City's sale of his property at 3843 Fairmount Avenue (the "Fairmount Property") and the demolition of his property at 508 W. Tabor Street (the "Tabor Property"). The Court previously dismissed all claims.

The Third Circuit Court of Appeals affirmed the dismissal of all claims against the City, Ituah's First Amendment claim against employee Roslyn Speller and all Fourth Amendment, equal-protection and tax-related claims against individual employees, but vacated the dismissal of his First Amendment retaliation claim against attorney Pamela Thurmond and Fifth Amendment Takings Clause claim against attorney Brendan Philbin and Joseph Carrol, an inspector for the City's Department of Licenses and Inspection ("L&I"). After discovery, Thurmond, Philbin and Carrol moved

1

for summary judgment on these remaining claims.  After considering the parties'
submissions and reviewing the record, the Court grants the Motion for the reasons that
follow.

I

A

On March 16, 2018, Ituah filed for bankruptcy in the Southern District of New
York.  (Defs.' SUMF ¶ 14, ECF 41–24).  Thurmond represented the City of
Philadelphia, one of Ituah's creditors, in the bankruptcy proceeding.  (*Id.* at ¶ 15).
Because the case was in New York, Thurmond asked for Ituah's consent to appear by
telephone, but Ituah declined the request.  (*Id.*).  The New York Bankruptcy was
subsequently dismissed on December 10, 2018 based on Ituah's motion for voluntary
dismissal.  (*Id.* at ¶ 18).

While the case was pending, the Philadelphia Sheriff's Office was holding excess
proceeds owed to Ituah from the Sheriff's sale of the Fairmount Property.  (Thurmond
Decl., ¶ 11, ECF 41–15).  The Sheriff's Office had determined Ituah was owed
$11,112.54 from the Fairmount Property.  (Check Letter, p. 10, ECF 41–17).  Because
Ituah had filed for bankruptcy, Thurmond sent a letter to the bankruptcy trustee with
the Sheriff's check for the excess proceeds and a title distribution report listing the
amount owed to each distributee.  (Check Letter, p. 5; Thurmond Decl. at ¶ 15).

Ituah filed another bankruptcy case on January 6, 2020, this time in the Eastern
District of Pennsylvania.  (Defs.' SUMF ¶ 27).  Because Ituah still had outstanding
debts to the City, the City was notified and Thurmond was assigned the case.  (*Id.* at
¶ 28).  Thurmond filed proofs of claims for Ituah's debts with the City's Water Revenue

Bureau.  (Water Debt Proof of Claim 1, ECF 41-19; Water Debt Proof of Claim 2, ECF 41-20).  Another City attorney, Megan Harper, filed a proof of claim for Ituah's tax debts, which indicated that the City's claim was secured by Ituah's real estate.  (Tax Debt Proof of Claim, ECF 41–21).  The proof of claim for tax debt incorporated an exhibit listing Ituah's properties, including his 33 S. 53rd Street property valued at $210,355.  (*Id.* at p.8).

Ituah filed a proposed bankruptcy plan as part of the bankruptcy proceeding. (Pennsylvania Bankruptcy Docket, p. 4, ECF 41–18).  On July 7, 2020, Thurmond filed an objection to the bankruptcy plan based in part on the plan's failure to provide full payment on the City's claims.  (ECF 41–22).  The bankruptcy trustee subsequently filed a motion to dismiss the bankruptcy due to delay and it was granted on September 23, 2020.  (Pennsylvania Bankruptcy Docket, p. 10).

## B

Between Ituah's two bankruptcy proceedings, on December 27, 2018, L&I inspector Carrol issued a Notice of Violation for Ituah's Tabor Property.  (Mot. to Demolish, Ex. A, ECF 41–4).  Carrol's inspection was in response to a report from the Police Department about a bulging wall.  (*Id.*).  Carrol determined the structure was in violation of the Philadelphia Code of General Ordinances, § PM-110, because it was in imminent danger of collapse.  (*Id.*).

Soon after, Philbin, on behalf of the City, filed a Petition for a Temporary Restraining Order and Preliminary Injunction in the Philadelphia Court of Common Pleas, to allow the City to demolish the Tabor Property.  (Tabor Dock. P. 4, ECF 41–3). At a hearing on the City's petition, City inspector Thomas Rybakowski, who also

inspected the Tabor Property, testified that the wall had separated from the window by several inches and it had "lost all of its structural integrity," the bracing for the wall was not permitted and improperly designed because it was only nailed into the ground, and the third floor of the structure had been illegally added without a permit thereby increasing the weight load on the wall.  (Ct. of Comm. Pleas Hr'g Tr., 13:24-14:20, 15:12-16:7, 16:18-17-13, ECF 41–6).  Rybakowski also presented photos showing the conditions he described and concluded that there was "the potential of a very serious collapse" of the building that would pose a danger to the public, remaining occupants of the property and the adjoining property.  (*Id.* at 16:18-17-13).  Ituah testified the Tabor Property could be repaired but did not present any evidentiary support or expert testimony.  (*Id.* at 17:14-16, 21-25).  Based on this record, the Court of Common Pleas found the structure was imminently dangerous and demolition was appropriate, (*Id.* at 25:7-26), and entered a temporary restraining order authorizing the City to demolish the property and for the Police Department to remove any occupants.  (ECF 41–8).  The City demolished the property two weeks later.  (Rybakowski Aff. ¶ 2, ECF 41–13).

C

Ituah filed a *pro se* 42 U.S.C. § 1983 action against the City of Philadelphia, the Philadelphia Police Department, and several City employees, alleging various constitutional violations arising from the City's 2015 sale of the Fairmount Property, and the 2019 demolition of the Tabor Property.  (ECF 1).

The Court dismissed all claims against all Defendants in Ituah's initial and amended complaints.  (ECF 9; ECF 18).  The Third Circuit affirmed the dismissal of all claims against the City, Ituah's First Amendment retaliation claim against employee

4

Roslyn Speller and all Fourth Amendment, equal-protection and tax-related claims against individual employees, but vacated and remanded this Court's decision with respect to the First Amendment retaliation claim against Thurmond and the Fifth Amendment takings claim against Philbin and Carrol. *Ituah v. City of Philadelphia*, No. 21-1213, 2022 WL 4464380, at *5 (3d Cir. Sept. 26, 2022).

The First Amendment retaliation claim involves a series of actions that Thurmond allegedly took against Ituah after Ituah filed for bankruptcy in New York, necessitating Thurmond's participation in the bankruptcy proceedings. (Am. Compl. ¶ 3, ECF 12). As to the Fifth Amendment Takings Clause claim, Ituah alleges that his rights were violated by Carrol and Philbin issuing a condemnation notice on the Tabor Property and Philbin filing "an action to demolish the property." (*Id.* at ¶ 4). Thurmond, Philbin and Carrol now move for summary judgment on these remaining claims.

## II

Summary judgment is proper if the movant proves that there is no genuine dispute as to any material fact and if the movant is entitled to judgment as a matter of law. *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). A fact is "material" if it may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Id.* A mere scintilla of evidence supporting the nonmoving party, however, will not suffice. *See id.* at 252.

At summary judgment, a court may consider any material in the record that would be admissible at trial. *See* Fed.R.Civ. P. 56(c); *Pamintuan v. Nanticoke Memorial Hosp.*, 192 F.3d 378, 387–88 (3d Cir. 1999). In doing so, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But it may not make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

## III

### A

To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he is engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) there was a causal link between the constitutionally protected conduct and the retaliatory action. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).

### B

Ituah alleges Thurmond, who represented the City in Ituah's bankruptcy proceedings, took the following retaliatory actions as "soon as the New York State bankruptcy was dismissed": (1) "encouraged the licensing units" to demolish the Tabor Property; (2) sent Ituah a proceed check that was too small an amount and "contrary to court order issued" in 2015 for property; (3) "pressed the bankruptcy court to dismiss

[Ituah's] bankruptcy [case]"; (4) "presented to the bankruptcy court the assessed value of 33 S. 53rd Street, Philadelphia for $210,000 to deceive the bankruptcy trustee"; (5) failed to credit payments to Ituah's accounts and created bills already paid; and (6) "engineered inaccurate bills." (Am. Compl. at 3-4, ¶ 5).

Ituah's filing of a petition for bankruptcy protection in federal court was protected conduct for purposes of his retaliation claim. *See Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 862 (4th Cir. 2001) (noting a retaliatory action taken in response to filing a bankruptcy petition would have constituted a viable First Amendment retaliation claim if the plaintiff had satisfied the other elements). But Ituah's retaliation claim fails because there is no record evidence showing that Thurmond engaged in any alleged retaliation, or a causal link between such retaliation and Ituah's initiation of bankruptcy proceedings.

There is no evidence Thurmond had any connection to the demolition of the Tabor Property. Ituah claims Thurmond should have known what actions others in the City government were allegedly taking against him, (Pl.'s Resp. to Mot. for Summ. Judg., p. 7-8, ¶¶ 50, 57-61), but a defendant in a civil rights action must be personally involved in the alleged wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The record includes no evidence of Thurmond's personal involvement in the demolition, any contact with officials in the Department of License and Inspection regarding Ituah's properties, or any knowledge of the Tabor Property's violation and demolition before Ituah sued Thurmond in this case. (Thurmond Decl. ¶¶ 36-37). And there is no evidence supporting Ituah's belief that the proximity of the New York bankruptcy case's dismissal and the demolition indicates causation. *See* (Am. Compl. at

7

3-4, ¶ 5; Pl.'s Resp. to Mot. for Summ. Judg., p. 7, ¶ 58).  Contrary to Ituah's suggestion that the demolition occurred shortly after the New York bankruptcy case's dismissal because the bankruptcy stayed the demolition, there is an exception to bankruptcy stays for litigation to enforce police powers—as was the case here.  *See* 11 U.S.C. § 362(b)(4); *infra* Section IV.

Nor is there any evidence in the record to support Ituah's claim that the amount of the August 2018 proceeds check Thurmond sent to the bankruptcy trustee was too low or contrary to a court order in 2015.  The $11,112.54 amount of the check matches the amount shown as excess proceeds on the title distribution report, (Check Letter, p. 10), and no court order or evidence shows otherwise.  And although Thurmond, in her role as the City's attorney, mailed the check to Ituah, (Defs.' SUMF ¶¶ 20-21), there is no evidence showing Thurmond was involved in determining the excess proceeds check's amount.

The claims that Thurmond pressed the bankruptcy court to dismiss Ituah's Pennsylvania bankruptcy case and presented false information about the value of Ituah's property also lack any evidentiary support.  The record shows it was the bankruptcy trustee, not Thurmond, who moved to dismiss the bankruptcy case. (Thurmond Decl. ¶ 25; ECF 41-1).  Thurmond did reference the proof of claim for Ituah's tax debt and the S. 53rd Street's valuation when objecting, on behalf of the City, to Ituah's proposed bankruptcy plan.  (City Object., ECF 41-22)  But it was attorney Megan Harper—not Thurmond—who filed the proof of claim for tax debt.  (Tax Proof of Claim, ECF 41-21)  Ituah points to nothing in the record from which a jury could find that the proof of claim was wrong or that Thurmond was aware of any error.

Ituah contended that Thurmond was aware of the City's payment records, (Pl.'s Resp. to Mot. for Summ. Judgment, p. 8, ¶ 63), but there is no evidence that Thurmond had any involvement in crediting payments to Ituah's accounts or communication with those who do.  There is also no evidence that Thurmond had any role in calculating or sending Ituah's utility and tax bills, or communication about the bill amounts with those who do.  In discovery, Ituah explained that when he alleged Thurmond "engineered inaccurate bills collection" he meant that Thurmond filed the "statement of claims presented to the bankruptcy court" based on allegedly inaccurate bills prepared by others.  (Ituah Inter., p. 7, ¶ 4, ECF 41-14).  There is no evidence of Thurmond doing anything of the sort.

IV

A

The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.' U.S. Const. amend. V.  This prohibition applies to state and local governments under the Fourteenth Amendment. *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001).  There is no requirement that a claimant exhaust state remedies before bringing a Takings Clause claim to federal court. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). However, property is not "taken" where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a dangerous condition. *See In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011) ("A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the

owner to demolish the dangerous piece of property.").

B

Section 110 of the Philadelphia Property Maintenance Code exists "to ensure public health, safety, and welfare insofar as they are affected by the continued occupancy and maintenance of structures and premises" and governs the inspection, citing, noticing and demolition of imminently dangerous structures. *See* PM Code §§ PM-101.3, PM-110 *et. seq*. City officials are authorized to inspect buildings and classify them as "imminently dangerous." *Id.* at § PM-110.1. A structure is defined as such when there is "imminent danger of failure or collapse of a structure or any part thereof which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure." *Id.* If city officials determine a building is imminently dangerous, they are then required to notify the property owner in writing with a description of the imminently dangerous condition, specifying the required repair to make, or requiring the imminently dangerous structure to be demolished within a stipulated time. *Id.* at § PM-110.2.

Ituah argued that the Tabor Property was not imminently dangerous, pointing to the fact that the structure did not collapse on its own during the two weeks between the Notice of Violation and the Demolition, and that it was "repairable." (Pl.'s Resp. to Mot. for Summ. Judg. at 6-7 ¶¶ 44, 49, ECF 43).

But the evidence shows, and Ituah does not dispute, that the structure could not remain safely in its then condition. Multiple inspectors determined the structure was imminently dangerous. *See* (Mot. to Demolish; Ct. of Comm. Pleas Hr'g Tr.). The Philadelphia Court of Common Pleas considered all evidence offered by the City and

10

Ituah and found that the structure was imminently dangerous and that demolition was appropriate.  (ECF 41–8).   Ituah does not provide any evidence substantiating the core elements of a Takings Claim.  The City, through Philbin and Carrol, acted to protect public safety pursuant to the City's police power, not eminent domain.

An appropriate Order follows.

BY THE COURT:

**_/s/ Gerald J. Pappert_**
GERALD J. PAPPERT, J.